**Alison M. BARRINGER, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. 6:00–CV338GLS.**

United States District Court, N.D. New York.

Feb. 24, 2005.

Conboy, McKay Law Firm (Lawrence D. Hasseler, Esq., of Counsel), Watertown, NY, for Plaintiff.

Glenn T. Suddaby, United States Attorney (William H. Pease, Esq., Assistant U.S. Attorney, of Counsel), Syracuse, NY, for Defendant.

## DECISION AND ORDER

SHARPE, District Judge.

### I. *Introduction*

Alison Barringer alleges that degenerative disc disease and pain in her lower back, right hip and knee have disabled her, and challenges the denial of benefits by the Commissioner of Social Security.[1] Having reviewed the administrative record, the court affirms the Commissioner's decision.

### II. *Procedural History*

After Barringer filed for supplemental security income benefits in July 1997, her application was denied, and a hearing was conducted by Administrative Law Judge

Thomas P. Zolezzi (ALJ). In February 1999, the ALJ issued a decision denying benefits, which became the Commissioner's final determination when the Appeals Council denied review on January 14, 2000.

On February 25, 2000, Barringer brought this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's final determination. The Commissioner then filed an answer and a certified administrative transcript, Barringer filed a brief, and the Commissioner responded.

### III. *Contentions*

Barringer contends that the Commissioner's decision is not supported by substantial evidence. She further claims that the ALJ erroneously: (1) disregarded the opinion of her treating physician; (2) disregarded her subjective complaints about pain and disabling symptoms; and (3) failed to set forth crucial factors of her residual functional capacity (RFC) with sufficient specificity. The Commissioner counters that substantial evidence supports the ALJ's decision that Barringer was not disabled.

### IV. *Facts*

The evidence in this case is undisputed and the court adopts the plaintiff's factual recitation. *See Pl.'s Br., pp. 3–8, Dkt. No. 5.*

### V. *Discussion*

#### A. *Standard and Scope of Review*

When reviewing the Commissioner's final decision, the court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Urtz v. Callahan,* 965 F.Supp. 324, 326 (N.D.N.Y. 1997) (citing *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987)). Although the Commissioner is ultimately responsible for

---

1. Barringer incorrectly refers to the Commissioner as "Secretary."

determining a claimant's eligibility, the actual disability determination is made by an ALJ, and that decision is subject to judicial review on appeal. A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence. *Johnson,* 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984).

■■■ A court's factual review of the Commissioner's decision is limited to the determination of whether substantial evidence in the record supports the decision. 42 U.S.C. § 405(g); *see Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams ex rel Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams,* 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the

administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982).

■■■ The court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980); *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir.1975) (remand to permit claimant to produce further evidence). Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker,* 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Sec'y of HHS,* 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability).

### B. *Five–Step Disability Determination*

A plaintiff seeking Supplemental Security Income (SSI) is disabled if she can establish that she is unable "to engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A) [2] (emphasis added).

---

**2.** In addition, a claimant's

physical or mental impairment or impairments [must be] of such severity that [s]he

The Commissioner uses a five-step process to evaluate SSI disability claims. *See* 20 C.F.R. § 416.920.[3] Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity (SGA). 20 C.F.R. § 416.920(b). If so, she is not considered disabled. However, if she is not engaged in SGA, Step Two requires that the ALJ determine whether the claimant has a severe impairment. 20 C.F.R. § 416.920(c). If the claimant is found to suffer from a severe impairment, Step Three requires that the ALJ determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P., Appendix 1, § 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *See Ferraris,* 728 F.2d at 584. If the claimant is not presumptively disabled, Step Four requires the ALJ to consider whether the claimant's RFC precludes the performance of her past relevant work. 20 C.F.R. § 416.920(e). At Step Five, the ALJ determines whether the claimant can do any other work. 20 C.F.R. § 416.920(f).

The claimant has the burden of showing that she cannot perform past relevant work. *Ferraris,* 728 F.2d at 584. However, once she has met that burden, the ALJ can deny benefits only by showing, with specific reference to medical evidence, that she can perform some less demanding work. *See White v. Sec'y of HHS,* 910 F.2d 64, 65 (2d Cir.1990); *Ferraris,* 728 F.2d at 584. In making this showing, the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills, to determine if she can perform other work existing in the national economy. 20 C.F.R. § 416.920(f); *see New York v. Sullivan,* 906 F.2d 910, 913 (2d Cir.1990).

In this case, the ALJ found that Barringer satisfied Step One because she had not worked since July 7, 1997. (Tr. 12, 15). In Step Two, the ALJ determined that she suffered from musculoskeletal impairments based on findings of slight sacroiliac joint sclerosis, mild disc bulging, desiccation and facet arthritis in her lumbosacral spine, as well as complaints of pain in her lower back and right groin. (Tr. 13, 15). In Step Three, the ALJ determined that her impairments failed to meet or equal a combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 13, 15). In Step Four, the ALJ determined that Barringer did not have the RFC to perform her past relevant work as a bartender and cashier. (Tr. 13, 15). In Step Five, the ALJ found

---

is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Therefore, a plaintiff must not only carry a medically determinable impairment but an impairment so severe as to prevent her from engaging in any kind of substantial gainful work which exists in the national economy.

**3.** The court notes that a revised version of this section came into effect in September 2003. *See* 68 Fed.Reg. 51161, 51164 (Aug. 26, 2003). In the revised version, paragraph (e) clarifies the application of the RFC determination. New paragraphs (f) and (g), with certain modifications, correspond to the prior version's paragraphs (e) and (f), respectively. These revisions do not affect the Five–Step Disability Determination sequence. The revised version has no effect on the outcome of this case. For considerations of uniformity, and because the ALJ's decision came under the old version, the court retains the old nomenclature in its analysis.

that Barringer possessed the RFC to perform the full range of light work.[4] (Tr. 13–15). Consequently, he found Barringer not disabled[5] and denied benefits. (Tr. 15).

## C. *Substantial Evidence*

### 1. *Insufficient Evidence*

Barringer contends that the record contains no medical evidence to support the Commissioner's determination that she was not disabled. Thus, a brief summary of the medical evidence of record and of the references to that evidence in the ALJ's decision is necessary. Upon review, the court finds this contention misplaced.

### (a) *David Van Eeenenaam, M.D. (treating physician)*

In 1986, Dr. Van Eenenaam first examined Barringer for discomfort in her right knee. He noted pain upon "firm palpation;" however, knee X–Rays were normal, and there was no effusion. (Tr. 155–56). In 1991, Barringer complained of soreness in her right groin resulting from a crack in her right hip. On examination, there was some irritability with motion of the right hip, but no gross neurovascular deficit in the right leg, and deep tendon reflexes were equal. Moreover, X–Rays of the right hip showed no evidence of definite bony abnormality. Consequently, Dr. Van Eenenaam diagnosed Barringer with right hip and lumbosacral sprain. In a follow-up examination, he opined that she had "some low-grade synovitis[6] that fortunately will improve." (Tr. 157–58).

In October 1996, Barringer again reported soreness in her right groin area. On examination, Dr. Van Eenenaam observed mild irritability in her right hip joint. However, he found good motion and no soreness in her back. There was no evidence of deformity in her right leg or any neurovascular deficit. Initially, Dr. Van Eenenaam cited reports of normal X–Rays of her right hip and an MRI (magnetic resonance imaging) showing no abnormality in the pelvis or hip. He suspected traumatic synovitis of the right hip and wanted to rule out atypical sciatica.[7] (Tr. 159). Subsequently, upon reviewing the X–Rays personally, he stated that they "appeared okay ... except for perhaps

---

**4.** Light work requires an ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b). In addition, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping." Social Security Ruling (SSR) 83–10.

**5.** The ALJ made this determination using Rule 202.21 of Table 2, Appendix 2, Subpart P, Regulation No. 4. (Tr. 15). Barringer does not contest the ALJ's reliance on this rule.

**6.** Inflammation of a fluid-secreting membrane in the joint resulting in pain and swelling. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1645 (28th ed.1994).

**7.** A syndrome characterized by pain radiating from the back into the buttock area and lower extremity commonly caused by protrusion of a low lumbar intervertebral disk; also used to describe pain along the course of the sciatic nerve. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1493 (28th ed.1994).

slight sacroiliac joint sclerosis." The MRI also showed no definite pathology. (Tr. 160). Although Barringer complained of pain in her right groin and soreness in her sacroiliac joint, physical examination revealed no neurovascular deficit or any other positive findings. The doctor again noted that she "probably [had] some low grade synovitis ... some question of sacroiliac discomfort." (Tr. 160). On October 31, X–Rays of the lumbosacral spine showed well-maintained disc space, no compression deformities, and no evidence of vertebral displacement or dissolution. Pelvic X–Rays were also negative. (Tr. 160). In December, the doctor observed mild irritability of the hip joint. At this time, Barringer was weight bearing without support, albeit with a limp. She had no low back pain, no subjective neurologic complaints of sciatic-type pain in her leg, and X–Rays were negative. (Tr. 161).

In April 1997, Barringer complained of lumbosacral and buttock pain. On examination, Dr. Van Eenenaam found no spasm. Although Barringer walked with a limp, she was able to heel and toe stand. Despite mild irritability during straight leg raising (SLR), there was no numbness or any gross weakness in the leg. Her hip moved well and she had no pain in the groin. A subsequent lumbar spine MRI showed mild diffuse disc bulging at the L4–5 level and some early degenerative disc disease at the L4–5 and L5–S1 levels. However, there was no evidence of disc herniation or spinal stenosis.[8] Dr. Van Eenenaam decided to continue with conservative treatment and to refer Barringer for physical therapy. He noted that Barringer should "avoid anything that requires heavy lifting, repetitive bending or stooping." In his opinion, she "remain[ed] disabled until we see how she responds to [physical therapy]." Barringer was to take over-the counter medication, and Darvocet occasionally. (Tr. 162).

In May 1997, Dr. Van Eenenaam again made minimal findings. Although Barringer had some soreness and limited motion in her back, she was able to heel and toe walk. SLR was minimally irritable, but deep tendon reflexes were symmetric, and gross sensation was normal. (Tr. 162). Similar examination findings were made over the next five months. (Tr. 163–64). In June, Dr. Van Eenenaam noted that Barringer was "capable only of sedentary work." (Tr. 163). On October 13, 1997, he indicated that Barringer had applied for Social Security benefits and had been turned down. He then gave her a slip stating that "she [could not] do any work that requires prolonged standing, sitting, heavy or repetitive lifting, bending or stooping. This most likely on a permanent basis." (Tr. 164).

Between March and August 1998, Barringer kept reporting pain and soreness in her back and sciatic pain down her right leg. Dr. Van Eenenaam's examination findings remained unchanged. In April, he commented on a myelogram[9] and CT (computed tomography) scan which showed moderate ventral changes of the thecal sac at L4–5, with no evidence of nerve root compression, indicative of either a small central disc herniation or disc bulge, and some facet arthritis at L4–5 and L5–S1. Dr. Van Eenenaam continued with conservative treatment, and indicated that Barringer would have to avoid stressful physical activity. He also noted that she

8. Narrowing of the vertebral canal, nerve root canals, or intervertebral passages of the lumbar spine. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1576 (28th ed.1994).

9. A contrast radiograph of the spinal cord. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1089 (28th ed.1994).

would be unable to work in the meantime. (Tr. 190).[10] Examination notes from May, June and August do not reveal significantly different findings, with the exception of knee pain complaints. Upon examination, however, Barringer had full range of motion in her knee, and the X–Ray findings were negative. (Tr. 196).

In November 1998, at the ALJ's request, Dr. Van Eenenaam submitted a medical report on Barringer. The doctor summarized his findings as "[decreased] ROM [range of motion of the] LS [lumbosacral] spine" and "SLR [positive in the right] LE [lower extremity]." These findings were based on the CT myelogram showing facet arthritis and small central HNP ("herniated nucleus polposus" or, more simply, a herniated disc). His diagnosis was degenerative disc disease with small central herniated disc at L4–5 and facet arthritis, with a recommended course of treatment of activity modification, exercises, and analgesics. He noted Barringer to have a fair response to the treatment with a poor prognosis. (Tr. 199). However, Dr. Van Eenenaam did not complete the attached physical activity assessment form. (Tr. 200–03).

(b) *Michael Owen, M.D. (examining neurologist)*

In August 1997, Dr. Owen consultatively examined Barringer at Dr. Van Eenenaam's request. Dr. Owen noted mildly positive SLR bilaterally, normal knee and ankle reflexes, and an ability to heel and toe walk without weakness. Dr. Owen found no consistent sensory loss. He noted the two MRIs showing bulging without herniation or nerve root compression. However, because of Barringer's stated disabling pain, he recommended a myelography to see if there was any evidence of nerve compression. (Tr. 189). On May 13, 1998, Dr. Owen issued a note indicating that Barringer was under his care for low back and right leg pain secondary to diffuse disc bulging at L4–5 and arthritis in her lumbar spine. Barringer was to remain on restricted activities and refrain from repetitive bending and heavy lifting. (Tr. 180).[11]

(c) *Charles Moehs, M.D. (examining physician)*

Also in August 1997, Dr. Moehs examined Barringer on behalf of the N.Y. State office of disability. He opined that the X–Rays, MRIs and other prior tests "showed nothing." On examination, Barringer reported back pain in the right sacroiliac and lumbosacral areas, radiating over to the left side. However, her SLR was normal bilaterally. Patrick's test[12] was positive on the right and negative on the left. Barringer's reflexes were diminished but appeared normal. She reported slight numbness in the posterior right calf, and her back flexion and extension were 45 and 10 degrees respectively. Although Dr. Moehs indicated that this might be a more complicated back problem than initially recognized, he diagnosed chronic back pain with sacroiliac dysfunction. (Tr. 168).

(d) *Diagnostic Test Results*

The objective medical tests, some of which were briefly mentioned above, can

10. The doctor's notes further show that in May, Barringer called to request a note stating that her boyfriend had to stay home with her. (Tr. 191, 181).

11. The note also stated that Barringer should have someone at home to help with caring for her children and, at times, doing daily household duties. (Tr. 180).

12. A test used to detect arthritis in the hip. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1681 (28th ed.1994).

be summarized as follows. On April 8, 1997, an MRI revealed a mild diffuse bulge at the L4–5 level causing some flattening of the anterior aspect of the thecal sac. This did not cause any significant spinal or neural foraminal stenosis. Disc desiccation at the L5–S1 level was also noted, with no evidence of disc herniation or spinal stenosis. (Tr. 165–66). On August 5, 1997, lumbar spine X–Rays showed mild narrowing of the L5–S1 disc with no osteophitic growth. Incidental note was made of Schmorl's nodes [13] in the L1 and L2 vertebral plates. The impression of the lumbar spine was essentially negative. (Tr. 169). Hip X–Rays showed no evidence of arthritic or degenerative changes. (Tr. 169). On April 28, 1998, a lumbar myelogram revealed a ventral defect at the L4–5 level consistent with either a small central disc herniation or a disc bulge, with no evidence of extrinsic nerve root compression. A contemporaneous CT scan of the lumbar spine showed diffuse disc bulging at L4–5,[14] with no focal disc protrusion. Mild to moderate osteoarthritic changes were noted on the L4–5 and L5–S1 facets. (Tr. 178–79).

(e) *RFC Assessment*

On October 6, 1997, Dr. White, a State agency consulting physician, prepared an RFC assessment in which she found that Barringer could occasionally lift twenty pounds, frequently lift ten pounds, could stand, walk, and sit for six hours each, and push or pull without limitation. (Tr. 171).

Dr. White also opined that Barringer was only limited in her ability to stoop occasionally, and had no other postural, visual, communicative, environmental, or manipulative limitations. (Tr. 172–74). She based this assessment on Barringer's allegations of back and right hip pain. She considered Barringer's negative SLR examination findings; back flexion and extension to 45 and 10 degrees, respectively; slightly reduced reflexes and numbness in her right calf; and pain medication. Dr. White also reviewed Barringer's diagnostic test results: the MRI findings showing a disc bulge in the lumbosacral spine, and X–Rays of the right hip showing no evidence of arthritic or degenerative changes. (Tr. 171–72).[15]

(f) *Additional Treatment Records*

In April 1997, Barringer was referred by Dr. Van Eenenaam for physical therapy at the C.A.N.I. Spine Center. Barringer's initial evaluation cited subjective complaints of constant back pain and intermittent pain in her hip and knee. It revealed findings that "were somewhat inconclusive, but suggestive of an irreducible disc derangement." (Tr. 187). These findings were adopted by physical therapist Thomas Walsh,[16] who indicated that Barringer was not responding well to mechanical therapy, and recommended injection treatment. Barringer was discharged after having attended three sessions in one

13. An irregular bone defect in the margin of the vertebra. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1143 (28th ed.1994). The same finding was reported in the April 1997 MRI. (Tr. 165).

14. The reviewing radiologist noted a fairly uniform disc bulge that did not extend above or below the vertebral body end plates, which was more "inkeeping with a disc bulge rather than a frank disc herniation." (Tr. 178).

15. A second State consulting physician concurred with Dr. White's assessment in January 1998. (Tr. 177).

16. Barringer refers to Mr. Walsh as "Dr. Walsh." This characterization is improper. See *infra* note 19.

week. (Tr. 188).[17]

### (g) The ALJ's Decision

■ In his decision, the ALJ noted Barringer's initial complaints of injury to her right leg, the possibility of traumatic synovitis, and the X–Rays revealing slight sacroiliac joint sclerosis. (Tr. 12). The ALJ also considered the April 1997 MRI tests, which revealed a mildly bulging disc at the L4–5 level causing mild flattening of the anterior thecal sac, as well as disc desiccation at L5–S1, without disc herniation or spinal stenosis. The ALJ further noted the CT scan and myelogram which revealed[18] a small disc herniation or disc bulge at L4–5 and facet arthritis at L4–5 and L5–S1. He noted that these tests showed no evidence of nerve root or spinal cord compression, herniation, or spinal stenosis. The ALJ also considered the following: Dr. Owen's recommendation that Barringer avoid repetitive bending and heavy lifting; Dr. Van Eenenaam's findings of slight irritation with SLR; and Dr. Moehs' finding of slight numbness over Barringer's right calf. The ALJ observed that Dr. Moehs' finding of numbness was not repeated by any other physician, that Barringer's sensation was normal, and that her motor strength was intact. Similarly, her reflexes had generally been intact and symmetrical. (Tr. 13). Based on the above, the ALJ concluded that there was no "ongoing, consistent evidence to suggest the presence of nerve root involvement." He also observed that many of the clinical abnormalities had been described as slight. (Tr. 13–14). Indeed, as his decision makes plain, the ALJ considered evidence from all the medical sources of record: Dr. Van Eenenaam (Tr. 12–14); Dr. Owen (Tr. 13–14); Dr. Moehs (Tr. 13–14); Dr. White (Tr. 13–14); and various diagnostic test results. (Tr. 12–14).[19] The foregoing record provides ample support for the conclusion that the ALJ's decision is supported by substantial evidence.

■ Barringer also claims that the ALJ did not consider the entire medical record. Specifically, she contends that the ALJ either selectively excluded findings by Drs. Moehs and Van Eenenaam, or improperly gave them little weight as isolated "clinical abnormalities." These contentions are misplaced. The ALJ was not required to mention or discuss every single piece of evidence in the record. *See*

17. Barringer attempts to suggest that she received physical therapy from April 22 through June 16, 1997. *See Pl.'s Br. at 10.* This contention is unsupported by the record. As the therapist's June 16 letter to Dr. Van Eenenaam makes clear, Barringer only attended three sessions over a one-week period in April, and was discharged for failing to return for treatment thereafter. (Tr. 188).

18. The ALJ referred to these results in the form of reported findings by Dr. Van Eenenaam. Upon review, both Dr. Van Eenenaam's interpretation and the ALJ's rendition are consistent with the objective test results. (Tr. 178–79).

19. The ALJ also considered Barringer's physical therapy treatment and hearing testimony. (Tr. 13–14). The court notes that Barringer attempts to present her physical therapist as a medical source. However, the Regulations do not classify therapists as medical sources, but rather as other sources which may be considered by the Commissioner, *see* 20 C.F.R. § 416.913, and as such, their opinions do not qualify as medical source opinions. *See* 20 C.F.R. § 416.927; *accord Diaz v. Shalala*, 59 F.3d 307, 312–13 (2d Cir.1995) (discussing treatment of chiropractors as "other sources" under 20 C.F.R. §§ 404.1527 and 404.1513, in the context of disability insurance benefits); *Ouellette v. Apfel*, 2000 WL 1262642, at *15 (N.D.Cal. Aug. 24, 2000); *Carter v. Shalala*, 1995 WL 505509, at *9 (S.D.N.Y. Aug. 24, 1995). Nevertheless, the court notes that therapists' opinions may be accorded some weight. *See Pogozelski v. Barnhart*, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004).

*Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983); *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir.1982); *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981); *see also Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir.1996); *Vincent v. Heckler,* 739 F.2d 1393, 1394–95 (9th Cir.1984); *Rebeck v. Barnhart,* 317 F.Supp.2d 1263, 1275 (D.Kan.2004). Where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur,* 722 F.2d at 1040. Moreover, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir.2000) (citation omitted). As already noted, the ALJ's decision in this case contains ample reference to all the medical sources. Thus, a conclusion that the ALJ did not consider all the evidence or that he selectively excluded objective findings is unwarranted.

■■■ Barringer further contends that the State consulting physician's RFC assessment does not constitute substantial evidence in support of the ALJ's decision. She argues that the ALJ relied on this assessment despite acknowledging that it was not entitled to great weight. This contention is without merit. "State agency physicians are qualified as experts in the

evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." *Leach ex rel. Murray v. Barnhart,* 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) (citing 20 C.F.R. § 416.927(f); *Mongeur,* 722 F.2d at 1039; *see Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir.1996); Social Security Ruling (SSR) 96–6p.

In this case, the ALJ relied on the October 1997 RFC assessment by Dr. White, which has already been discussed above. Dr. White's assessment was based on: Barringer's subjective allegations of pain; examination findings relative to physical limitations and neurological deficiencies; objective diagnostic test results; and pain medication. Upon review of the record, her assessment was consistent with the objective medical evidence, and the ALJ properly relied on it for his determination. *See* 20 C.F.R. § 416.927(f); SSR 96–6p. Barringer does not expressly[20] contest the ALJ's reliance on Dr. White's RFC assessment. However, she argues that the ALJ's reliance on this assessment was improper because Dr. White did not have available the subsequent myelogram, treatment notes and reports by Drs. Van Eenenaam and Owen, which she claims establish the severity of her condition. This contention is unsupported by the record. Moreover, even though Dr. White could not have considered these records, they

---

**20.** Instead, she submits that Dr. White: (1) did not examine her; (2) indicated that she reviewed no information on file from a treating physician regarding her physical capacity; and (3) did not indicate precisely what information she reviewed in reaching her conclusion. Barringer's first contention merely states the obvious and is wholly without merit. Her second point is similarly truistic, but also misinterprets Dr. White's notation. In her RFC, Dr. White checked a box indicating

that there was no treating source statement on file regarding Barringer's physical capacities. (Tr. 176). This check mark indicates no more than the absence of a contemporaneous physical capacities statement by a treating physician. It does not mean, as Barringer implies, that Dr. White failed to review an existing statement. Finally, Barringer's third contention is addressed in the body of this opinion.

were taken into consideration and discussed by the ALJ in his decision.

## 2. Treating Physician Rule

 Barringer argues that the ALJ disregarded the opinion of her treating physician.[21] Generally, the opinion of a treating physician is given controlling weight if it is based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. 20 C.F.R. § 416.927(d)(2); *see Schaal v. Apfel*, 134 F.3d 496 (2d Cir.1998). An ALJ may not arbitrarily substitute his own judgment for a competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999). If the treating physician's opinion is not given "controlling weight," the ALJ must assess several factors to determine how much weight to afford the opinion: the length of the treatment relationship, the frequency of examination by the treating physician for the condition(s) in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. 20 C.F.R. § 416.927(d)(2)-(6).

 Moreover, the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner.'" *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) (citation omitted); *see* 20 C.F.R. § 416.927(e)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions." *Snell*, 177 F.3d at 133. Thus, a treating physician's disability assessment is not determinative. *Id.* Where the evidence of record includes medical source opinions that are inconsistent with other evidence or are internally inconsistent, the ALJ must weigh all of the evidence and make a disability determination based on the totality of that evidence. *See* 20 C.F.R. § 416.927(c)(2).

Barringer's reliance on her treating physician's "total disability" opinion is unavailing. First, as correctly noted by the ALJ, the final determination of disability was reserved for the Commissioner, and therefore the doctor's opinion of total disability was not binding on the ALJ. (Tr. 14). Second, in his decision, the ALJ found that Dr. Van Eenenaam's opinion was not well-supported by objective medical evidence. In discounting Dr. Van Eenenaam's opinion, the ALJ considered the objective medical evidence showing a mild bulge or small herniation at L4–5 and disc desiccation at L5–S1, without evidence of nerve root or spinal cord compression. The ALJ also noted that many of Barringer's clinical abnormalities had been described as slight and were limited overall. In addition, Dr. Moehs' finding of slight numbness had not been repeated by any other examiner.[22]

---

**21.** Barringer uses the term "attending physicians" for Drs. Van Eenenaam, Moehs, and Owen. *See Pl.'s Br. at 15*. The court notes that of the three, only Dr. Van Eenenaam opined that she was disabled. Neither Dr. Owen, nor Dr. Moehs rendered such an opinion. To the extent Dr. Owen can be considered to have provided any opinion with respect to her disability status, the record only contains his recommendation that Barringer "refrain from repetitive bending and heavy lifting." (Tr. 180). Thus, Dr. Van Eenenaam is the only doctor whose opinion of disability is considered under the treating physician rule.

**22.** Barringer submits that Dr. Moehs' indication that "this is a more complicated type of back problem than recognized" somehow reinforces the seriousness of her condition. However, as the Commissioner points out, Dr. Moehs only diagnosed chronic back pain with sacroiliac dysfunction. (Tr. 168). Barringer points to no part of the record that could have led the ALJ to conclude that this notation by Dr. Moehs was an "opinion" that she was totally disabled.

Moreover, Barringer's reflexes had generally been symmetrical, motor strength had remained intact, and limitation of motion had been uncorroborated by muscle spasm. The ALJ also noted that the limitations recommended by Dr. Owen were indicative of an ability to perform a wide range of jobs, and that the RFC findings by Dr. White were consistent with an ability to perform light work. (Tr. 14). Upon review, the record supports the ALJ's determination that Dr. Van Eenenaam's opinion [23] was not well-supported by objective medical evidence. Therefore, the ALJ's decision not to accord this opinion controlling weight was not erroneous.

### 3. Subjective Complaints

■ Barringer also claims that the ALJ improperly disregarded her subjective complaints of pain, physical limitations, and other symptoms. The court recognizes the inherent difficulty in evaluating a claimant's credibility without actual physical contact. This makes the review of an ALJ's credibility assessment particu-

larly onerous and frequently results in significant deference to the ALJ.[24]

■ The ALJ must perform a two-step analysis. See 20 C.F.R. § 404.1529; see also Crouch v. Comm'r, Soc. Sec. Admin., 2003 WL 22145644, at *10 (N.D.N.Y. Sep. 11, 2003) (citation omitted). First, based upon the objective medical evidence, the ALJ must determine whether the impairments "could reasonably be expected to produce the pain [25] or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a); see Crouch, 2003 WL 22145644 at *10. "Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work." Crouch, 2003 WL 22145644 at *10 (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

■ Where the alleged symptoms suggest that the impairment is greater than demonstrated by objective medical

---

23. Barringer also submits that Dr. Van Eenenaam did not complete the RFC assessment requested by the ALJ because the doctor's office has consistently refused or declined to complete such forms. However, she does not explain how the refusal of her treating physician to assist the ALJ in his effort to assemble a full and impartial record translates into an error by the ALJ.

24. The ALJ is entitled to evaluate a claimant's credibility and reach an independent judgment regarding subjective symptoms in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms. See Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir.1984).

25. A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence. 20 C.F.R. § 416.929(c)(4). Pain alone may, under some circumstances, serve as the basis for estab-

lishing disability. See Rivera v. Schweiker, 717 F.2d 719, 724 (2d Cir.1983); Gallagher ex rel Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir.1983). However, some pain does not automatically translate into disabling pain. See Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir.1983) ("disability requires more than mere inability to work without pain"). A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain. 20 C.F.R. § 416.929(a)-(b). It does not require objective evidence of the pain itself or its degree. Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir.1986); see 20 C.F.R. § 416.929(c)(2). The pain must be properly evaluated, considering the applicant's credibility and motivation as well as the medical evidence of impairment to reach an independent judgment concerning the true extent of the alleged pain, and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

evidence, the ALJ will consider other factors, such as daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms. *See* 20 C.F.R. § 416.929(c)(3); SSR 96–7p. "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96–7p. Therefore, "[a]n [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must [do so explicitly and] set forth his or her reasons with sufficient specificity to enable [the courts] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel,* 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal quotation marks, citation omitted); *see Brandon v. Bowen,* 666 F.Supp. 604, 608 (S.D.N.Y.1987).

In this case, the ALJ summarized the essential details of Barringer's testimony regarding pain, symptoms, and limitations, and the court need not repeat them here. (Tr. 14); *see Pl.'s Br. at 25.* The ALJ then found that Barringer's allegations were not supported by the medical record, which did not contain findings establishing the presence of impairments that could reasonably be expected to result in the alleged symptoms and limitations. Specifically, the ALJ relied on the diagnostic tests revealing only mild clinical abnormalities. He further considered the lack of medical evidence of nerve root or spinal cord compression which might have caused numbness or radiation of pain. Likewise, Barringer had no weakness or atrophy suggesting disuse of her legs.

In addition, the ALJ noted that Barringer could do the laundry, vacuum,[26] and take her children to the playground. He also considered Barringer's testimony that she only took her medication as needed, and did not take any medication at all on some days.[27] The ALJ further noted that Barringer only attended physical therapy sessions for one week following her initial evaluation. Finally, the ALJ noted that the record did not indicate a course of ongoing or active treatment.[28] Instead, treatment was limited to medical observation and use of medications. Based on the above, the ALJ concluded that Barringer's allegations regarding the frequency and severity of her symptoms and limitations were overstated. Upon review, the ALJ properly articulated his rationale, which is supported by substantial evidence. *See* SSR 96–7p. Therefore, the ALJ properly evaluated and disregarded Barringer's subjective complaints.

---

**26.** Barringer argues, and the court agrees, that the ALJ misstated the record with respect to her ability to vacuum and do the laundry. As her testimony shows, Barringer relied for those chores on her boyfriend. (Tr. 45). However, the ALJ's incorrect rendition of Barringer's ability to perform those activities amounts to nothing more than harmless error where, as here, his credibility assessment is amply supported by other substantial evidence. *Rebeck,* 317 F.Supp.2d at 1274 n. 3 (citation omitted); *see Jones v. Barnhart,* 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7, 2003) (citations omitted).

**27.** Parenthetically, the record shows that Barringer denied any side effects from her medication other than occasional tiredness. (Tr. 43).

**28.** "While failure of a claimant to seek medical treatment is not a defense to a claim for disability benefits, the failure to seek medical attention and low dosage use of pain medication does cast doubt upon the seriousness of a claimant's impairments." *Dahlgren v. Barnhart,* 2005 WL 66078, at *16 (N.D.Ill. Jan. 7, 2005) (citing *Caldarulo v. Bowen,* 857 F.2d 410, 413 (7th Cir.1988)).

#### 4. Specific RFC Findings

 Barringer also argues that the ALJ did not set forth his RFC findings with sufficient specificity. In his decision, the ALJ found that while Barringer could not lift more than 10 pounds frequently and 20 pounds occasionally, she nevertheless retained the ability to perform the full range of light work. (Tr. 15). Barringer takes issue with the ALJ's language, arguing that the ALJ never found her *capable* of lifting or carrying those amounts of weight. This circuitous argument lacks merit. Barringer also contends that there is no discussion about her ability to stand and/or walk. Additionally, she claims that the ALJ's conclusion with respect to her ability to sit and stand/walk for six hours is unsupported by the record.

However, a fair reading of the administrative record supports the conclusion that the ALJ incorporated these findings in his decision. The ALJ's RFC determination is based on Dr. White's assessment, which sets forth the specific findings claimed to be missing by Barringer. As noted by the ALJ, Dr. White's RFC findings are consistent with an ability to perform the full range of light work. Moreover, the ALJ properly relied on Dr. White's RFC, which was consistent with the objective medical evidence and physicians' findings. Finally, the ALJ's RFC determination was also based upon and consistent with the findings of Dr. Owen and the objective medical evidence. Therefore, the ALJ's RFC determination was set forth with sufficient specificity and supported by substantial evidence.

#### VI. Conclusion

After careful review of the entire record, and for the reasons stated, this court finds that the Commissioner's denial of benefits was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision denying benefits is **AFFIRMED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**