Thomas J. DWYER, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

No. 09 Civ. 10168.

United States District Court, S.D. New York.

July 14, 2011.

Christopher James Bowes, Shoreham, NY, for Plaintiff.

Susan D. Baird, U.S. Attorney's Office, New York, NY, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Thomas Dwyer ("Dwyer") brings this action seeking review of the final determination of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Dwyer now moves for judgment on the pleadings, and the Commissioner cross-moves for judgment on the pleadings. For the reasons discussed below, the Court DENIES Dwyer's motion and GRANTS the Commissioner's cross-motion.

### I. BACKGROUND [1]

#### A. PROCEDURAL HISTORY

Dwyer filed an application for SSI disability benefits on July 12, 2007 (the "Application"), alleging disability because of depression. Following denial of his Application by the Social Security Administration (the "SSA"), Dwyer requested a hearing, which took place on March 5, 2009, before Administrative Law Judge Robin Artz (the "ALJ"). Dwyer was represented at the hearing by Michael T. Sullivan, Esq.

---

1. The factual background below is derived from the administrative record ("Record" or "R.") filed by the Commissioner. Except where noted, no further citation to the Record will be made.

By written decision dated March 23, 2009 (the "ALJ Decision"), the ALJ concluded that Dwyer was not disabled within the meaning of the Act and thus not eligible for disability benefits. Specifically, the ALJ found that, although Dwyer had a severe impairment, he retained the residual functional capacity to perform his past work as a security guard for a cemetery and as a foot messenger. On September 4, 2009, the SSA Appeals Council denied Dwyer's request for review. As a result, the ALJ Decision became the final determination of the Commissioner. Dwyer filed this action on December 14, 2009, seeking review of the ALJ Decision.

On October 27, 2010, Dwyer moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, requesting reversal of the ALJ Decision and remand for further proceedings on the ground that the ALJ Decision was based on legal error and not supported by substantial evidence. The Commissioner cross-moved for judgment on the pleadings on December 1, 2010.

## B. *DWYER'S HISTORY*

Dwyer was forty-six years old when he filed his Application for SSI. Previously, Dwyer held various jobs, including part-time employment as a foot messenger from 1995 to 1997 and full-time employment as a security guard at a cemetery from 1998 to 2002.

Dwyer lived with his mother in an apartment in Queens, New York until her unexpected death in October of 2005. As he has no siblings or other close family members, Dwyer depended on his mother emo-tionally and financially. After her death, Dwyer began to feel depressed and could no longer afford his rent. By April of 2006, he was in arrears of $8,000 and facing eviction.

In connection with Dwyer's eviction proceedings, Dr. Robert Spain ("Spain"), a psychiatrist, visited Dwyer at his apartment on April 10, 2006, for a consultative psychiatric evaluation. In an affidavit dated June 26, 2006 (the "Spain Affidavit"), Spain noted that Dwyer had "life long [sic] passivity and marginal functioning" and opined that Dwyer was "not employable in his current condition." (R. at 206–07.) Spain diagnosed Dwyer with "depressive disorder" and recommended the appointment of a guardian ad *litem* to represent Dwyer's interests in housing court. (*Id.*) Although Dwyer was assigned a guardian *ad litem*, he was still evicted from his apartment in May of 2007.

On May 20, 2007, Dwyer voluntarily admitted himself to Lenox Hill Hospital ("Lenox") for a thirteen-day psychiatric hospitalization. Dwyer, who had no formal psychiatric history, reported increasing feelings of sadness, anxiety, hopelessness, and worthlessness since his mother's death. He stated that he came to Lenox because he had been "crying uncontroll-ably" and "feeling overwhelmingly depressed." (R. at 142.) Dwyer was assigned to the psychiatric unit at Lenox and treated with an antidepressant. The discharging physician diagnosed Dwyer with "major depressive disorder, moderate," and rated his Global Assessment of Functioning ("GAF") at 50.[2] Five months later, on October 17, 2007, Dwyer had a consultative psychiatric evaluation at F.E.G.S.

---

**2.** GAF rates overall psychological functioning on a scale of 0–100, based upon psychological, social, and occupational functioning. A GAF in the range of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n. *Diagnostic and Statistical Manual of Mental Disorders* ("DSM–IV") 34 (4th ed. rev. 2000).

WeCARE, a health and human services organization, which rated Dwyer's GAF at 65.[3] (R. at 225–26.)

On November 2, 2007, at the request of the New York State Department of Disability Determinations, Dr. Mindy Zelen ("Zelen"), a psychologist, met with Dwyer for a consultative psychiatric evaluation. Zelen, who also diagnosed Dwyer with "major depressive disorder," opined that Dwyer retained the ability to follow and understand simple instructions, make simple decisions, and relate adequately with others. She stated, however, that it was "unclear" whether Dwyer could perform simple tasks independently and that Dwyer "may have difficulty maintaining his attention for tasks" and "would have difficulty managing stress due to depression/bereavement." (R. at 181.) She concluded that Dwyer "would be unable to maintain a regular schedule currently." (*Id.*)

On November 15, 2007, Dr. M. Apacible ("Apacible"), a state agency psychiatric consultant, reviewed the evidence submitted in connection with Dwyer's Application and completed a functional capacity assessment. Apacible found that Dwyer had mild to moderate limitations in the following categories of mental activities: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Accordingly, he concluded that Dwyer "would not be precluded from all work entirely." (R. at 199.)

On November 19, 2007, Dwyer began seeing Dr. Chris Holden ("Holden"), a psy-chiatrist at Beth Israel's Psychiatric Outpatient Services Adult Clinic (the "POSA Clinic"). Holden treated Dwyer through June of 2008 for a total of seven visits. At his intake with Holden, Dwyer reported symptoms of social isolation, low energy, poor concentration, and diminished sleep. Holden diagnosed Dwyer with "major depressive disorder, single episode, moderate" and rated his GAF at 61. (R. at 282.) This diagnosis and GAF remained constant throughout Dwyer's treatment, which consisted of antidepressant medication and monthly visits with Holden to assess Dwyer's response to the medication.

In January of 2008, Dwyer reported that medication was "maybe helping a little," (R. at 287), and Holden remarked that Dwyer was "improving, but [had] not reached optimal improvement." (R. at 253.) On June 10, 2008, Holden performed a mental status exam of Dwyer.[4] Holden recorded the following findings: (i) attitude: cooperative; (ii) mood: sad/depressed; (iii) concentration: attentive; (iv) memory: good; (v) intelligence: average; (vi) insight: fair; (vii) judgment: fair. Holden concluded that despite a "continued depressed mood," Dwyer had "some improvement in appetite, better energy, [and] less feelings of helplessness/hopelessness." (R. at 259.)

On July 10, 2008, Dwyer began seeing Dr. Caroline Blackman ("Blackman"), another psychiatrist at the POSA Clinic. Blackman treated Dwyer through September 2, 2008, for a total of three visits. In July of 2008, Blackman performed a mental status exam of Dwyer, the findings of

---

**3.** A GAF in the range of 61 to 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM–IV* at 34.

**4.** A mental status exam is a standard diagnostic tool used by psychiatrists to objectively and thoroughly report a patient's mental state at the time of the interview. The mental status exam generally assesses a patient's appearance, attitude, mood, affect, speech, thought process, thought content, cognition, insight, and judgment.

which mirrored those of Holden a month prior. The only difference was that Blackman found Dwyer's mood to be normal as opposed to depressed. Blackman also diagnosed Dwyer with "major depressive disorder, single episode, moderate" and rated his GAF at 61. (R. at 265.)

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

The scope of review of a Social Security disability determination requires two levels of inquiry. First, "the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999); *see also Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984) ("Failure to apply the correct legal standards is grounds for reversal.").

Second, the Court must determine whether the Commissioner's decision is supported by substantial evidence. *Tejada*, 167 F.3d at 773; *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.1998). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Where there is substantial evidence to support the Commissioner's decision, that decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See* 42 U.S.C. § 405(g); *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990).

### B. *DISABILITY DETERMINATION*

"Disability" is defined in the Act as the inability

to engage in any substantial gainful activity by reason of any medically determinable physical or·mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A). An individual may be found disabled

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 1382c(a)(3)(B).

To determine whether an individual is disabled under the Act, the ALJ must employ the five-step sequential evaluation process for the adjudication of disability claims contained in 20 C.F.R. § 416.920. *See Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir.2000). The Second Circuit has described this process as follows:

1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2) If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3) If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 [5] of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without consider-

---

**5.** "Appendix 1" and "the Appendix" refer to 20 C.F.R. Pt. 404, Subpt. P.App. 1, § 12.00.

ing vocational factors such as age, education, and work experience.

4) If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past relevant work.

5) If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Id.*

If, at any step, the Commissioner can make a finding that the claimant is disabled or not disabled, he must do so and the process need not continue. *See* 20 C.F.R. § 416.920(a)(4). If the Commissioner cannot make such a determination, then he must continue to the next step. *See id.* The burden of proof with respect to the first four steps falls on the claimant. *See DeChirico*, 134 F.3d at 1180. At the fifth step, the burden shifts to the Commissioner to show that the claimant can perform work that is available in the national economy. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir.2009).

### C. ANALYSIS

Dwyer argues that the Commissioner's determination should be reversed for two reasons. First, Dwyer contends that the ALJ committed legal error by (1) mischaracterizing medical reports from Lenox and Zelen, and (2) excluding the Spain Affidavit from consideration. Second, Dwyer asserts that the ALJ Decision was not supported by substantial evidence. The Court addresses each of these arguments in turn.

### 1. The ALJ's Evaluation of the Evidence

Upon review of the Record, the Court is persuaded that the ALJ applied the correct legal standards in determining that Dwyer is not disabled as defined in the Act. At step one, the ALJ found that Dwyer had not engaged in substantial gainful activity since July 12, 2007. At step two, the ALJ determined that Dwyer had a severe mental impairment, specifically "major depressive disorder, single episode." (R. at 26.) At step three, the ALJ found that although Dwyer's impairment was severe, it was not a disability *per se* under the Appendix.

Before proceeding to step four, the ALJ assessed Dwyer's residual functional capacity ("RFC"), and found that he retained the ability to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, respond appropriately to coworkers and supervisors, and deal appropriately with usual work situations and changes in a routine work setting. Based on Dwyer's RFC, the ALJ determined that, despite his limitations, Dwyer could perform his past work as a security guard and as a foot messenger. Accordingly, the ALJ concluded that Dwyer was not disabled as defined in the Act and thus not entitled to disability benefits.[6]

Dwyer argues, however, that the ALJ committed legal error. First, Dwyer submits that the ALJ mischaracterized the discharge report from Lenox because she described the findings of his mental status exam upon discharge as "normal," but failed to mention his GAF of 50 at the

---

**6.** Despite her determination that Dwyer was not disabled under step four of the analysis, the ALJ continued to step five and found, in the alternative, that based on Dwyer's RFC, age, education, and past relevant work, other jobs existed in the national economy that Dwyer could perform. This alternative finding is not at issue in the present action.

time. Dwyer contends that the omission of this GAF from the ALJ Decision demonstrates that the ALJ did not properly consider the evidence. The Court is not persuaded.

■ Although the ALJ did not specify Dwyer's GAF upon discharge from Lenox, she cited other findings from the discharge report as a basis for her conclusion that Dwyer was not disabled within the meaning of the Act. An ALJ "is not required to discuss all the evidence submitted, and his failure to cite specific evidence does not indicate it was not considered." *Santos v. Astrue,* 709 F.Supp.2d 207, 211 (S.D.N.Y. 2010) (*quoting Barringer v. Comm'r of Soc. Sec.,* 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005)); *see also Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) ("When ... the evidence of record permits [the Court] to glean the rationale of an ALJ's decision, we do not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). Therefore, the ALJ's failure to mention Dwyer's GAF of 50 is insufficient to conclude that she failed to consider it.

Dwyer also argues that the ALJ mischaracterized Zelen's report. In particular, Dwyer contends that the ALJ failed to consider Zelen's opinion that Dwyer "would be unable to maintain a regular schedule" and "would have difficulty managing stress due to depression/bereavement." (R. at 181.) The Court finds no support in the Record for this assertion given that the ALJ specifically referenced both of these findings in the ALJ Decision. Thus, the Court concludes that the ALJ properly considered Zelen's report in rendering her decision.

■ Dwyer next argues that the ALJ improperly excluded the Spain Affidavit

from consideration. Dwyer relies on 20 C.F.R. § 416.912(d), which provides in pertinent part:

> Before [the SSA makes] a determination that you are not disabled, [the SSA] will develop your complete medical history for *at least* the 12 months preceding the month in which you file your application, unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application.

(emphasis added). The regulations define "complete medical history" as:

> the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application. If you say that your disability began less than 12 months before you filed your application, [the SSA] will develop your complete medical history beginning with the month you say your disability began unless [the SSA has] reason to believe that your disability began earlier.

20 C.F.R. § 416.912(d)(2).

Even though Dwyer concedes that he listed July 12, 2007, as the onset date of his disability in his Application, he maintains that the Record contains ample evidence to indicate that his depression began shortly after his mother died in October of 2005. Thus, Dwyer contends, the ALJ should have considered the Spain Affidavit, dated June 26, 2006, as part of his complete medical history, and the case should be remanded for reconsideration.

Even if the Court were to agree with Dwyer, remand would be unwarranted. While the Spain Affidavit was favorable to Dwyer, given the regulations governing the weight assigned to medical opinions, the ALJ would have reached the same conclusion had she considered it. *See*

*Johnson v. Bowen,* 817 F.2d 983, 986 ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."). To determine what weight to give a medical opinion, an ALJ must consider the following: (1) the examining relationship; (2) the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other considerations brought to the attention of the Commissioner. 20 C.F.R. § 416.927(d). Applying these considerations to the present case, Spain's opinion merited little, if any, weight.

First, Spain examined Dwyer on only one occasion for a consultative evaluation. Holden and Blackman, on the other hand, each had an ongoing treatment relationship with Dwyer, and both rated Dwyer's GAF at 61, which is consistent with an opinion that Dwyer was "generally functioning pretty well." *DSM–IV* at 34. As treating physicians, Holden's and Blackman's opinions are entitled to greater weight than those of consulting physicians, *see* 20 C.F.R. § 416.927(d)(2), and indeed, the ALJ Decision explicitly accorded the opinions of Holden and Blackman significant weight.

Second, Spain's opinion was not supported by additional evidence or explanation. The more a medical source explains or presents relevant evidence to support an opinion, the greater the weight that opinion should be afforded. *See* 20 C.F.R. § 416.927(d)(3). Although the Spain Affidavit references a mental status exam, it does not include any findings derived from that exam. By contrast, the opinions of Holden, Blackman, and Zelen are accompanied by the relevant mental status exam findings. Accordingly, these latter opinions are entitled to greater weight.

Third, Spain's opinion was inconsistent with the Record as a whole. "Generally,

the more consistent an opinion is with the record as a whole, the more weight [the Commissioner] will give to that opinion." 20 C.F.R. § 416.927(d)(4). Spain's opinion of Dwyer's functioning was considerably less positive than any other medical source opinions in the Record, and such an inconsistency would result in his opinion being afforded less weight.

Finally, Spain conducted his evaluation in March of 2006, and no other medical records exist for Dwyer from then until his hospitalization at Lenox in May of 2007. Given the remoteness of the Spain Affidavit from both the period at issue and Dwyer's subsequent treatment, it is the least relevant of the reports in the Record. Because application of the correct legal standards to the Record could lead to only one conclusion, the Court finds that remand for consideration of the Spain Affidavit is unnecessary. *See Johnson,* 817 F.2d at 986.

2. *Substantial Evidence*

 Dwyer also argues that the ALJ's assessment of Dwyer's RFC is not supported by substantial evidence. Again, the-Court disagrees. Holden and Blackman, Dwyer's treating physicians whose opinions, as previously mentioned, are entitled to significant weight, consistently rated Dwyer's GAF at 61. Furthermore, both Holden and Blackman found that Dwyer was attentive and had a good memory, average intelligence, and fair judgment. Both examining and non-examining physicians gave similar opinions and findings. Zelen opined that Dwyer was able to follow and understand simple directions and instructions, make simple decisions, and relate adequately with others. Apacible concluded that Dwyer's capacities with regard to understanding and memory, sustained concentration and persistence, social interaction, and adaptation were only

moderately limited and that he "would not be precluded from work entirely." (R. at 199.) These reports provide more than ample support for the ALJ's assessment of Dwyer's RFC. Although certain portions of the reports from Spain, Lenox, and Zelen present evidence that conflicts with the ALJ's RFC determination, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir.2002) (*citing Richardson,* 402 U.S. at 399, 91 S.Ct. 1420); *see also Fiorello v. Heckler,* 725 F.2d 174, 176 (2d Cir.1983) (noting that an ALJ need not "reconcile explicitly every conflicting shred of medical testimony"). Therefore, the Court concludes that the ALJ Decision was supported by substantial evidence.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 8) of plaintiff Thomas J. Dwyer for judgment on the pleadings is DENIED; and it is further

**ORDERED** that the cross-motion (Docket No. 10) of defendant Michael J. Astrue for judgment on the pleadings is GRANTED.

The Clerk of the Court is directed to terminate any-pending motions and to close this case.

**SO ORDERED.**