Tawanna A. GREENE, Plaintiff,

v.

Carolyn W. COLVIN [1], Commissioner, Social Security Administration, Defendant.

No. 09–cv–01374 (WGY).

United States District Court, W.D. New York.

April 5, 2013.

1. Carolyn W. Colvin is currently the Acting Commissioner of the Social Security Administration ("SSA") and replaces former SSA Commissioner Michael J. Astrue in the caption. *See* Fed.R.Civ.P. 25(d).

Peter A. Gorton, Lachman, Gorton Law Firm, Endicott, NY, for Plaintiff.

Thomas C. Gray, Social Security Administration, New York, NY, for Defendant.

### DECISION and ORDER

WILLIAM G. YOUNG, District Judge.[2]

## I. INTRODUCTION

Tawanna Alicia Greene ("Greene") brings this action pursuant to section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). Greene challenges the decision of the Administrative Law Judge (the "hearing officer") denying her application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits. Greene requests this Court grant her motion for judgment on the pleadings and grant her application for both SSDI and SSI benefits, or remand this case to the Commissioner for further proceedings. Compl., ECF No. 1; Pl.'s Br. ("Greene's Mem."), ECF No. 13. The Commissioner requests that this Court affirm the hearing officer's decision and grant its motion for judgment on the pleadings. Def.'s Br. Pursuant Gen. Order No. 18 ("Def.'s Mem."), ECF No. 14.

### A. Procedural Posture

On May 2, 2007, Greene filed a Title II application for SSDI benefits, as well as a Title XVI application for SSI benefits, alleging disability for a period beginning November 10, 2006. Admin. R. at 95. Greene's application was initially denied on

2. Of the District of Massachusetts, sitting by designation.

July 23, 2007, *id.* at 51, and Greene filed a timely written request for hearing on August 29, 2007, *id.* at 57. Greene testified at a hearing held on August 13, 2009, and was represented by an attorney. *Id.* at 21. The hearing officer issued an unfavorable decision on September 24, 2009. *Id.* at 8. Greene subsequently filed a timely request for review, *id.* at 1, which was denied by the Appeals Council on November 25, 2009, *id.* at 1–5. On December 7, 2009, Greene filed the present action with this Court to review the decision of the Commissioner pursuant to 42 U.S.C. section 405(g). Compl. 1.

### B. Factual Background

Greene was born in 1971. Admin. R. at 89. Greene attended school regularly through eighth grade and has not received any formal education since that time. *Id.* at 26. Her prior employment includes positions in customer service, laundry service, and a six-year period of employment as a document preparation clerk. *Id.* at 27–28. Greene has a history of psychological and emotional problems, as well as mild physical problems. *Id.* at 30–31, 34–35. In 2006, she was involved in a motor vehicle accident, *id.* at 181, that subsequently caused more acute physical problems, *id.* at 30.

#### 1. Physical Impairments

Greene was involved in a motor vehicle accident on April 1, 2006. *Id.* at 181. After the accident, Greene was transported on a back-board to Wilson Memorial Medical Regional Center ("Wilson Memorial") and presented to Dr. Safa Naman ("Dr. Naman"). *Id.* at 181–82. Greene reported only moderate pain but specifically complained of pain in her lower back. *Id.* Dr. Naman ordered a C-spine series X-ray, an LS-spine series X-ray, and an X-ray of her pelvis, all of which returned no signs of bone damage. *Id.* at 181. Dr.

Naman prescribed Vicodin for the pain and released Greene from the hospital the same day. *Id.* at 182.

Three days after her accident and discharge from Wilson Memorial, Greene presented to Our Lady of Lourdes Memorial Hospital ("Lourdes Memorial"), still complaining of back pain. *Id.* at 212. Thomas Burkert ("Burkert"), the attending physician's assistant, saw Greene and advised her to limit her physical activity at work. *Id.* Burkert restricted her to lifting under five pounds for a two-week duration, suggesting she follow up as needed. *Id.* On April 12, 2006, Greene followed up with Burkert, who observed significant improvements in Greene's prognosis. *Id.* at 211. Observing no tenderness on the impacted regions of her spine and determining Greene was "much improved," Burkert subsequently cleared her to return to work on April 17, 2006, with no limitations. *Id.*

Greene returned to Lourdes Memorial only a few months later, again complaining of back pain. *Id.* at 209. Dr. Darlene Denzien ("Dr. Denzien"), Greene's primary care physician, examined Greene and suggested she make an appointment with a chiropractor. *Id.* Dr. Denzien also prescribed hydrocodone and Flexeril, and advised Greene to stop working for three weeks. *Id.* Greene did not follow Dr. Denzien's suggestion to see a chiropractor. *Id.* at 203, 205.

Greene continued to see Dr. Denzien at Lourdes Memorial for several months and agreed to have an MRI on her lower back on December 4, 2006. *Id.* at 213. On January 19, 2007, Dr. Denzien conferred with Greene about the results of her MRI. *Id.* at 205. Dr. Denzien saw bulging discs in her spine but was unable to determine whether these were caused by the motor vehicle accident or were the natural shape of her spine. *Id.* Dr. Denzien again requested that Greene seek the care of a

chiropractor and advised Greene that if she did not seek chiropractic treatment soon, she would "pass a window where no treatment will help." *Id.*

On April 5, 2007, Greene presented to Dr. Denzien for continued treatment on her back pain. *Id.* at 203. Dr. Denzien concluded that Greene's physical condition remained "[u]nchanged" since her previous visit. *Id.* During the January 19, 2007, examination, Dr. Denzien found a full range of motion, although Greene had difficulty getting up from a flexed position. *See id.* at 203–05. Dr. Denzien also found that Greene was unable to bend sideways. *Id.* Dr. Denzien informed Greene that she was not a candidate for surgery but urged Greene to see a chiropractor, advice that Greene had yet to follow. *Id.* at 203. Dr. Denzien continued Greene "off work." *Id.*

On June 14, 2007, Greene underwent an orthopedic examination after a referral by the Division of Disability Determination. *Id.* at 218. Greene was examined by Dr. Joseph Kohn ("Dr. Kohn"), who observed that Greene's chief complaint was of back pain, but her gait and station were normal, and she possessed the ability to walk on her heels and toes "without difficulty." *Id.* at 219; *see id.* at 218–19. Dr. Kohn observed the x-Rays of Greene's lumbar sacral spine, and he found no specific disc deformities. *Id.* at 220. Dr. Kohn found only slight limitation on Greene's lumbosacral ranges of motion and observed no spinal tenderness or spasm. *Id.* Dr. Kohn concluded that although Greene "ha[d] mild restrictions for heavy lifting," her prognosis was "fair." *Id.*

On October 7, 2008, Greene again consulted with Dr. Denzien regarding her back pain. *Id.* at 271. Greene had recent-ly received custody of her granddaughter and was lifting the child more frequently. *Id.* Dr. Denzien's physical exam found little tenderness in Greene's cervical spine and "some spasm" in her lower back. *Id.* Dr. Denzien's note reflects that she attempted to prescribe Duragesic patches for the pain in the past, but Greene preferred to stay with a prescription for hydrocodone since she was afraid of the patches. *Id.* Dr. Denzien indicated that Greene could return if she wished to "step up her pain management program." *Id.*

In addition to her continued treatment of lumbar disc pain, Dr. Denzien also diagnosed Greene with carpal tunnel syndrome and fibromyalgia. *Id.* at 266–67. On April 17, 2009, Greene presented to Dr. Denzien complaining of discomfort in her right wrist. *Id.* at 267. Dr. Denzien found positive Tinel's and Phalen's in her right wrist, consistent with a finding of carpal tunnel syndrome. *Id.* On May 18, 2009, Greene had a routine appointment with Dr. Denzien, who noticed more severe symptoms caused by Greene's lumbar disc deformity, including feet swelling and trigger points in her anterior and posterior lumbar. *Id.* at 266. Dr. Denzien concluded that Greene had developed fibromyalgia. *Id.* Dr. Denzien advised Greene to maintain her current dosage of medication and informed Greene that they would discuss further treatment plans as the fibromyalgia progressed. *Id.*[3]

## 2. Mental Impairments

Greene also reported a history of mental impairments. On July 27, 2006, Greene presented at Lourdes Memorial complaining of depression (along with her simultaneous complaint of back pain, as discussed

---

**3.** The record and hearing officer's decision also contain additional visits by Greene to Dr. Denzien and other medical professionals not specifically referenced herein. *See* Admin. R. at 8–20, 181–299. These records contain medical history and evaluations consistent with those taken by the medical professionals discussed previously.

above). *Id.* at 210. Dr. Denzien prescribed Cymbalta to treat the symptoms of Greene's depression. *Id.*

On June 14, 2007, Greene met with Dr. Dennis M. Noia ("Dr. Noia") for a psychiatric examination. *Id.* at 214–17. Greene was attentive and cooperative, but Dr. Noia found Greene exhibited mildly to moderately impaired routine memory function. *Id.* at 216. After observing her demeanor and asking her simple questions regarding her psychiatric history, Dr. Noia concluded that Greene's intellectual ability was in the low to average range but found that Greene "appear[ed] to be capable of performing simple and some complex tasks with supervision" and "capable of learning new tasks." *Id.* at 217. Dr. Noia observed, however, that Greene "appear[ed] to be having some difficulty dealing with stress." *Id.* Dr. Noia recommended that Greene continue with pharmacological treatment for her depression. *Id.*

On October 10, 2008, Greene met with Dr. Robert Russell ("Dr. Russell"), a licensed psychologist in New York. *Id.* at 260–64. Dr. Russell performed the Wide Range Achievement Test, Third Edition, during Greene's examination. *Id.* at 263. Dr. Russell believed that her difficult family history and feelings of self-consciousness contributed to her anxiety and depression but concluded that her depression and anxiety were not severe enough to be work-limiting. *See id.* at 263–64.

### 3. Testimony

On August 13, 2009, Greene testified before the hearing officer. *Id.* at 22. Greene described her education, her prior work history, and the motor vehicle accident that caused much of her alleged disability. *See id.* at 26–30. Greene described the pain in her back and the swelling experiences in her right foot, which limited her mobility. *Id.* at 33. She stated that she was unable to do most housework without help from her son's grandmother and that although she cared for her young granddaughter, she relied heavily on the grandmother's assistance. *See id.* at 32–33, 35–36.

Greene described the treatment she received from Dr. Denzien and the doctor's diagnoses of severe chronic back pain, manic depression, carpal tunnel syndrome, and fibromyalgia. *Id.* at 33–35, 39. Greene also enumerated the medications Dr. Denzien prescribed to treat these conditions: hydrocodone, Lyrica, and Flexeril for the pain, as well as Ability and Cymbalta for the depression. *Id.* Greene mentioned that her back pain continued but noted that she believed her carpal tunnel significantly improved after Dr. Denzien advised her to wear a wrist brace. *Id.* at 40, 41. Greene described feeling continuously "groggy and sick" after taking her medications. *Id.* at 42.

The hearing officer asked Greene questions about the emotional problems that led to the loss of her job. *Id.* at 34. Greene noted that although she had not received any psychiatric treatment for her mental health issues, Dr. Denzien provided Greene with the necessary emotional support. *Id.* Since the loss of her full-time job, Greene described her days as mostly spent in bed with minimal amounts of time spent doing house chores. *Id.* at 35–36. She estimated that she spent seventy-five percent of each day in bed. *Id.* at 43. Greene also claimed that walking was too painful with her back condition. *Id.* at 46.

## II. LEGAL STANDARD

### A. Standard of Review

Federal district courts have the power to affirm, modify, or reverse a decision of the Commissioner. 42 U.S.C. § 405(g); *Laven v. Astrue*, No. 10–CV–01360 (NPM), 2011 WL 6318360, at *3

(N.D.N.Y. Dec. 15, 2011) (McCurn, J.). A district court applies the same standard of review for social security benefits as does the court of appeals. *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996). In general, the factual findings of the administrative officer are final unless unsupported by substantial evidence. *Diaz v. Shalala,* 59 F.3d 307, 312 (2d Cir.1995) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)) (internal quotation marks omitted).

■ Legal decisions are reviewed de novo, and if there is a reasonable doubt that the Commissioner applied the appropriate legal standards, even if the decision could arguably be supported by substantial evidence, the Commissioner's decision may not be affirmed. *See Whipple v. Astrue,* No. 5:08–CV–1356 (GTS/DEP), 2011 WL 1299352, at *5 (N.D.N.Y. Mar. 8, 2011) (Peebles, M.J.) (citing *Martone v. Apfel,* 70 F.Supp.2d 145, 148 (N.D.N.Y.1999) (Hurd, J.)).

### B. Social Security Disability Standard

A claimant is disabled for the purposes of SSDI benefits and SSI eligibility if she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *accord Petrie v. Astrue,* 412 Fed.Appx. 401, 404 (2d Cir.2011).

The Social Security Administration promulgated a five-step sequential evaluation process to decide whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The hearing officer must ascertain whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant suffers a severe impairment; (3) the impairment matches or medically resembles an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1, and complies with the duration requirement; (4) the claimant keeps the residual functional capacity to perform her past relevant work; and (5) the impairment precludes the claimant from performing other work considering the claimant's age, education, and work experience. *Id.* §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

The claimant has the burden of proof on the first four steps, but the Commissioner bears the burden on the last one. *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir.2008). The steps must be considered in order. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### III. THE HEARING OFFICER'S DECISION

The hearing officer first determined that Greene had not engaged in substantial gainful activity since November 10, 2006. Admin. R. at 13. The hearing officer then found that Greene's lumbar disc disorder, mild cognitive deficits, depressive affective disorder, and generalized anxiety disorder did not meet or medically equal the impairments listed in the regulations. *Id.* at 13, 15–16. The hearing officer concluded that Greene's diagnoses of carpal tunnel syndrome and fibromyalgia did not satisfy the twelve-months-or-more durational requirement under the Act. *Id.* at 14. Furthermore, the hearing officer determined that Greene had only mild restrictions for daily living stemming from her mental impairments. *Id.* at 16.

Although the hearing officer found that Greene's impairments could reasonably be expected to cause her alleged symptoms, the hearing officer did not find her statements concerning the intensity, persistence, and limiting effects credible. *Id.* at 17. The hearing officer concluded that the statements lacked credibility because they were inconsistent with her residual functional capacity assessment. *Id.*

The hearing officer found that despite the deference typically granted to a claimant's treating physician, the opinions of Dr. Denzien were not credible because they were not adequately supported by clinical or laboratory reports and were otherwise inconsistent with Greene's medical file of record. *Id.* at 18.

The hearing officer then determined that Greene was capable of performing light work but found that Greene was likely unable to perform her past work the way she was doing it because of her limited ability for heavy lifting. *Id.* The hearing officer determined that while she was unable to perform her previous tasks, Greene could perform a significant number of jobs in the national economy. *Id.* at 18–19. Accordingly, the hearing officer found that Greene was not disabled from November 10, 2006, through September 24, 2009. *Id.* at 19.

## IV. ANALYSIS

Greene asks this Court to decide whether the hearing officer's determination that she is not disabled is supported by substantial evidence and is free of legal error. Greene's Mem. 1. Greene argues that the hearing officer committed reversible error by (1) failing to give necessary weight to the treating physician's opinion by refusing to follow the "Treating Physician Rule"; (2) failing adequately to support the residual

functional capacity determination; (3) failing adequately to support the credibility determination; and (4) failing to find that the diagnoses of fibromyalgia and carpal tunnel syndrome were severe impairments. *Id.* at 1, 6–20.

### A. Failure to Follow the "Treating Physician Rule"

The hearing officer, at the second step of the sequential evaluation process, is required to determine whether the claimant's impairment or combination of impairments are severe and significantly limit the claimant's physical or mental ability to do elementary work activities for more than one year. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(c); *see also id.* §§ 404.1521(a), 416.921(a) (defining non-severe impairments). The claimant must present evidence establishing severity. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999); *see also* 20 C.F.R. § 404.1512(c) (establishing that "[the claimant] must provide medical evidence showing that [she] ha[s] an impairment(s) and how severe it is during the time [she] say[s] that [she] [is] disabled").

■ This step of the sequential evaluation process requires the hearing officer to apply the "Treating Physician Rule,"[4] which requires that the treating physician's opinion regarding the severity of the impairments be granted controlling weight if the opinion is well supported by medical findings and it is otherwise not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(c)(2); *see also Rosa* 168 F.3d at 78–79.

■ The hearing officer must analyze a series of factors in order to support a reduction in the treating physician's credi-

---

**4.** For a full discussion of the evolution of the "Treating Physician Rule," *see Sastre v. As-* *true,* 870 F.Supp.2d 267, 275 n. 2 (D.Mass. 2012).

bility. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)). These factors include "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark*, 143 F.3d at 118. When examining a treating physician's opinion, the hearing officer "cannot arbitrarily substitute her own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (quoting *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983) (internal quotation marks omitted)).

■ In the present action, the hearing officer determined that the opinion of Greene's treating physician, Dr. Denzien, was entitled to little controlling weight because her medical conclusions were "not supported clinically or radiologically" in the record. Admin. R. at 18. Greene contends that the hearing officer's failure to consider the extensive doctor-patient relationship with Dr. Denzien, and the further failure to cite any medical opinion inconsistent with Dr. Denzien's findings, resulted in reversible error. Greene's Mem. 6–7. Greene also contends that the hearing officer failed to consider each of the factors for weighting a treating physician's opinion. *Id.* at 6; *see Clark*, 143 F.3d at 118.

As an initial matter, Greene's assertion that the hearing officer did not consider Dr. Denzien's extensive treatment of Greene contradicts the administrative record. *See* Admin. R. at 14–16. The hearing officer's opinion extensively cited Dr. Denzien's examinations of Greene dating back to 2006, when Greene first began treatment with Dr. Denzien after her motor vehicle accident, and up through 2009,

when Dr. Denzien diagnosed Greene with fibromyalgia. *Id.* at 14–15. Although Greene asserts that the hearing officer did not consider the twenty-six examinations Dr. Denzien performed on Greene throughout the record, the hearing officer's opinion makes clear reference to these examinations. *Id.* The hearing officer's analysis of the length and extent of Dr. Denzien's doctor-patient relationship with Greene shows that she did consider the first necessary factor when weighing the treating physician's opinion. *See Clark*, 143 F.3d at 118. (listing the "frequency of examination and the length, nature, and extent of the treatment relationship" as the first balancing factor).

Greene also insists that the medical opinion of Dr. Denzien supported a clinical finding of disability and asserts that the hearing officer ignored these findings and substituted her own judgment rather than further developing the record. Greene's Mem. 10. In the Second Circuit, a failure to follow the treating physician rule can be the basis of a remand when the hearing officer did not seek additional information from the treating physician that would further develop an incomplete record. *See Shaw*, 221 F.3d at 134 (holding that "[f]or the [hearing officer] to conclude that plaintiff presented no evidence of disability . . . , yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record"); *Rosa*, 168 F.3d at 79 (observing that a "[hearing officer] cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record").

These cases, however, are distinguishable from the present matter. In the cases where the Second Circuit has reversed a decision due to the "Treating Physician Rule," gaps in the record were filled in by the hearing officer's judgment rather than

by the treating physician's opinion. *See Shaw,* 221 F.3d at 134; *Rosa,* 168 F.3d at 79. In the present action, however, no similar gaps in the record existed, since Dr. Denzien, Greene's treating physician, included extensive radiological evidence and clinical evaluations that the hearing officer used in the decision. *See* Admin. R. at 14–15. Based on this information, the hearing officer found that the extensive radiological and clinical evidence simply did not support Dr. Denzien's finding of disability. *Id.*

Initial x-rays taken by Dr. Naman subsequent to Greene's motor vehicle accident showed no fractures or broken discs in Greene's back. *See id.* at 181–82. The hearing officer noted that Greene's MRI from 2006 showed minimal abnormalities, and Dr. Denzien specifically indicated that she could not determine whether the bulging discs were the result of an injury or were naturally formed. *Id.* at 205. Moreover, during subsequent physical examinations, Dr. Denzien concluded that Greene's condition only consisted of a reduced range of motion and occasional muscle spasms. *Id.* at 205–06, 271. Dr. Denzien determined that Greene was not a candidate for surgery and continuously recommended that Greene seek treatment from a chiropractor, a recommendation Greene did not follow. *See id.* at 205, 273. Dr. Denzien described Greene's injury as "multiple disc disease," while also expressly categorizing the injury as merely a "strain or sprain." *Id.* at 266. *But see id.* at 182. Moreover, Dr. Denzien suggested that Greene's pain could be controlled with additional medications. *Id.* at 271.

Despite Dr. Denzien's physical conclusions and the clinical evidence of Greene's mild condition, her medical opinion categorizes Greene as severely disabled. *Id.* at 223. This conclusion seems to contradict the clinical findings of the consulting physicians and appears to be in disagreement with the clinical and radiological findings discussed. Specifically, the hearing officer noted that Dr. Kohn's consultative examination of Greene concluded that although she had mild restrictions on heavy lifting, her prognosis was otherwise "fair." *Id.* at 220. Dr. Kohn observed the x-Rays of Greene's lumbar sacral spine, and he found no specific disc deformities. *Id.* Furthermore, Dr. Kohn found only slight limitation of Greene's lumbosacral ranges of motion and observed no spinal tenderness or spasm. *Id.*

Despite Greene's assertion that the hearing officer substituted her own judgment, the record reflects that the hearing officer weighed Dr. Denzien's conclusions against the record as a whole, as required by 20 C.F.R. section 416.927(d)(2), and reasonably concluded that the medical opinions lacked the necessary clinical support. *Id.* at 14–16. The hearing officer had substantial evidence in the record to conclude that Dr. Denzien's medical conclusions were not supported by clinical and radiological evidence, and this evidence justified the hearing officer's decision to limit the weight of Dr. Denzien's medical opinion. *Id.* at 18.

**B. Failure Adequately to Support the Residual Functional Capacity Determination**

The hearing officer's residual functional capacity determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984). It is, however, "not require[d] that [the hearing officer] have mentioned every item of testimony presented to [her] or have explained why [she] considered particular evidence unpersuasive or insufficient to lead [her] to a

conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983) (per curiam); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) (rejecting the proposition that the hearing officer must explicitly discuss every piece of conflicting testimony).

■ In this case, the hearing officer found that Greene retained the residual functional capacity to perform light work with mental ability remaining to perform routine manual jobs. Admin. R. at 16–17. Greene, however, argues that the residual functional capacity determination cannot be sustained because it is the product of two errors. Greene's Mem. 7–10. First, Greene argues that the hearing officer failed to consider the entire record. *Id.* at 6–12. Second, Greene contends that the hearing officer erred in failing to consider all impairments in combination and failing to consider her depression, anxiety, and emotional disorders as a severe impairment. *Id.* at 11–12.

Greene's first argument is unpersuasive. Although the hearing officer is required to fully develop the record, she is not required to discuss all the evidence submitted, and her failure to cite specific evidence does not indicate that it was not considered. *See Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 78–79 (N.D.N.Y.2005) (Sharpe, J.); *see also Mongeur*, 722 F.2d at 1040; *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982) (per curiam); *Miles*, 645 F.2d at 124. The hearing officer's decision contained ample references to objective medical evidence in the record. *See* Admin. R. at 14–15, 17–18. Therefore, Greene's claim that the hearing officer failed to properly consider the entire record does not prevail.

The Court rejects Greene's remaining argument because the hearing officer's residual functional capacity determination is supported by substantial evidence. The hearing officer's determination that Greene retained the residual functional capacity to perform light work was largely based on the observations of Dr. Kohn and the joint psychological evaluations of Drs. Noia and Russell. *See id.* at 14–15, 17–18. Dr. Kohn observed during an examination in June 2007 that Greene was in no acute distress, had a normal gait, and was able to walk on her toes and heels. *Id.* at 219. He noted that Greene had full range of motion in her cervical spine, as well as full range of motion in her shoulders, elbows, forearms, and wrists. *Id.* Dr. Kohn's stated that Greene had "mild restrictions for heavy lifting and carrying" but otherwise found no specific abnormalities. *Id.* at 220. Although the hearing officer relied heavily on the observations of Dr. Kohn, the cited clinical findings of Dr. Denzien are otherwise consistent with the conclusion of only mild restriction. Specifically, Dr. Denzien's clinical findings indicated muscle tenderness and spasm as Greene's most common symptoms, *see id.* at 204–05, and Dr. Denzien frequently diagnosed Greene's impairment as "back pain," *id.* at 203–6, or "strain," *id.* at 182.

There was also substantial evidence in the administrative record from which the hearing officer could conclude that Greene's mental impairments were not sufficiently severe significantly to impair her residual functional capacity. The hearing officer noted that Greene's psychiatric examination conducted by Dr. Noia in June 2007 revealed that Greene's demeanor was appropriate and cooperative, and she had fluent speech intelligibility. *Id.* at 215–16. As the hearing officer noted, Dr. Noia concluded that Greene could perform simple tasks and some complex tasks with supervision. *Id.* at 217. Moreover, Dr. Noia concluded Greene could "regularly attend to a routine and maintain a sched-

ule" and was "capable of learning new tasks." *Id.*

Dr. Russell's analysis from October 2008 concurred with Dr. Noia's assessment, as his examination also reflected Greene's mild psychological symptoms. *See id.* at 263–64. Dr. Russell found that Greene's intelligence did not appear to be a limiting factor for routine jobs and believed that her depression and anxiety were not severe enough to prevent her from working. *Id.*

Although the hearing officer did not expressly cite Dr. Denzien's psychological observations, nothing in the medical record contradicts the finding that Greene could perform light work. Moreover, unlike Dr. Noia and Dr. Russell, Dr. Denzien was not a specialist in psychology or psychiatry. *See id.* at 217, 260. *But see id.* at 34–35. Therefore, the hearing officer could reduce the weight of Dr. Denzien's opinions regarding Greene's mental health. *See Clark*, 143 F.3d at 118 (noting that the hearing officer can consider whether the treating physician is a specialist when not granting decisive weight to her opinion).

Accordingly, this Court rules that the conclusions of Dr. Kohn, Dr. Noia, and Dr. Russell provide substantial evidence for the hearing officer to find that Greene retained a residual functional capacity to perform light work.

## C. Failure Adequately to Support the Credibility Determination

■ Greene also asks this Court to determine whether the hearing officer's credibility determination was adequately supported by substantial evidence. Greene's Mem. 12–18. In making a credibility determination, the hearing officer "is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question."

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citations omitted). Rather, the hearing officer "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).

■ The regulations outline a two-step process for assessing claims of subjective pain. *Id.* "At the first step, the [hearing officer] must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.*; *see* 20 C.F.R. § 404.1529(b). If the claimant suffers from such an impairment, the second step requires the hearing officer to determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Genier*, 606 F.3d at 49 (alteration in original) (quoting 20 C.F.R. § 404.1529(a)) (internal quotation marks omitted).

■ Greene contends that the hearing officer erred by concluding that her testimony concerning the intensity, persistence, and limiting effects of her impairments were not credible. Greene's Mem. 14–18. She claims that the hearing officer did not properly recognize the limitations her multiple medications caused and that the hearing officer misstated evidence by citing to contradictory statements made by Greene throughout the record. *Id.* at 14–15.

The Social Security regulations have long recognized that subjective symptomatology is not, standing alone, sufficient to establish the existence of a disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). A plaintiff must also provide medical findings that show the existence of a medical condition that could reasonably be expected to

produce the alleged symptoms and that, when considered with all other evidence, demonstrates that she is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

Following the two-step process, the hearing officer found that Greene's medically determinable impairments reasonably could be expected to cause the alleged symptoms but that Greene's subjective assessment of the intensity, persistence, and limiting effects of the symptoms were "not credible to the extent that they [were] inconsistent with the . . . residual functional capacity assessment". Admin. R. at 17.

The medical record does not corroborate Greene's subjective symptomatology to the disabling extent she alleges. Although Greene does suffer from some limitations due to her impairments, the record shows that Greene is able to provide some care for her infant granddaughter and is able to assist in shopping, washing dishes, and occasionally preparing meals. *See id.* at 124–27. Dr. Noia, Dr. Kohn, and Dr. Russell found only minimal limitations during their examinations, which suggests that Greene is capable of performing her activities of daily living. *See id.* at 214–17, 218–22, 260–64. Additionally, the hearing officer also noted that despite Greene's frequent complaints of pain, Greene declined to follow up with a chiropractor, a choice at odds with Dr. Denzien's continuous recommendations. *Id.* at 217.

In light of this evidence, the Court rules that the hearing officer's credibility determination was supported by substantial evidence.

### D. Failure to Recognize Carpal Tunnel Syndrome and Fibromyalgia As Severe Impairments

The final issue is whether the hearing officer's failure to recognize Greene's carpal tunnel syndrome and fibromyalgia as severe impairments consti-

tuted reversible error. *See* Greene's Mem. 18–19. The Social Security regulations expressly indicate that unless the impairment is likely to result in death, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 416.909. Greene's administrative hearing occurred on August 13, 2009, five months after the first reference to fibromyalgia and carpal tunnel syndrome in Greene's medical history. Admin. R. at 266–67.

Greene contends that the proper standard for evaluating her two additional alleged impairments is to consider when symptoms arose, not when the impairment was diagnosed by her treating physician. Greene's Mem. 18. Greene also contends that although Dr. Denzien did not diagnose carpal tunnel syndrome and fibromyalgia until mid–2009, *see* Admin. R. at 266–67, Dr. Denzien found similar symptoms of both conditions in her earlier evaluations consistent with these diagnoses, *see id.* at 19.

Greene's contention is without merit, as it contradicts the administrative record. Nothing in the medical record indicates that Dr. Denzien believed Greene may have been suffering from carpal tunnel syndrome or fibromyalgia until the first mention of these conditions in April and May 2009 respectively. Admin. R. at 266–67. Moreover, Dr. Denzien's medical record shows no specific changes to Greene's treatment in light of either condition: carpal tunnel was not mentioned again, and Dr. Denzien's treatment plan for fibromyalgia included a similar regimen of medication to treat her pain symptoms with the possibility of "further plans" if the disease progressed. *Id.* Dr. Kohn's earlier consultative medical examination found no symptoms of either condition; rather, Dr. Kohn's examination found only mild limitations from her lower back pain. *Id.* at 220.

Additionally, Greene indicated in her testimony that her carpal tunnel symptom improved after Dr. Denzien suggested she wear a wrist brace from time to time, showing that even the subjective symptomatology did not rise to a severe impairment. *See id.* at 39–40. Greene presented no additional evidence that her carpal tunnel continued to limit her ability to perform light work. *Id.*

In light of the rest of the administrative record, the hearing officer had substantial evidence that neither condition satisfied the statutory duration requirement of twelve months. *See* 20 C.F.R. §§ 404.1509, 416.909. Accordingly, the hearing officer correctly determined that carpal tunnel syndrome and fibromyalgia did not constitute severe impairments.

## V. CONCLUSION

For the foregoing reasons, Greene's motion for judgment on the pleadings is DENIED; the Commissioner's motion for judgment on the pleadings is GRANTED; the hearing officer's decision denying disability benefits is AFFIRMED; and Greene's Complaint is DISMISSED.

**IT IS SO ORDERED.**