Terrie A. **MILLER, Plaintiff,**

v.

Carolyn W. **COLVIN, Acting Commissioner of Social Security, Defendant.**

**No. 13–CV–6512 EAW.**

United States District Court, W.D. New York.

Signed Feb. 12, 2015.

Jere B. Fletcher, Rochester, NY, for Plaintiff.

Andreea Laura Lechleitner, Social Security Administration, New York, NY, Kathryn L. Smith, U.S. Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

## I. INTRODUCTION

Plaintiff Terrie A. Miller ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Plaintiff's application for Supplemental Security Income ("SSI"). (Dkt. 1). Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") John P. Costello was not supported by substantial evidence in the record and was based on erroneous legal standards.

Presently before the Court are the parties' opposing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 6, 11). For the reasons set forth below, this

Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Thus, the Commissioner's motion for judgment on the pleadings (Dkt. 6) is granted, and Plaintiff's motion (Dkt. 11) is denied. Plaintiff's complaint is dismissed with prejudice.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Overview

On April 26, 2012, Plaintiff protectively filed an application for disability insurance benefits. (Administrative Transcript (hereinafter "Tr.") 128–33). In her application, Plaintiff alleged a disability onset date of November 1, 1996. (Tr. 164). Plaintiff alleged the following disabilities: heart problems, depression, bipolar disorder, and panic attacks. (*Id.*). On August 14, 2012, the Commissioner denied Plaintiff's application. (Tr. 74–77).

On January 23, 2013, Plaintiff, represented by counsel, testified at a hearing before ALJ Costello. (Tr. 26–73). Vocational Expert ("VE") Peter Manzi also appeared and testified. (Tr. 68–72). On April 17, 2013, the ALJ issued a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 9–21).

On July 22, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–3). On September 20, 2013, Plaintiff filed this civil action appealing the final decision of the Commissioner. (Dkt. 1).

### B. The Non–Medical Evidence

Plaintiff was 45 years old at the time of the hearing. (Tr. 32). Plaintiff graduated from high school with an Individualized Education Plan (IEP) diploma. (*Id.*). Plaintiff had varied previous work experience, including time as a motel cleaner and as a fast food worker. (Tr. 33–34, 154). Plaintiff had experienced periods of homelessness. (Tr. 268). She engaged in prostitution for a period of time and had also been incarcerated on more than one occasion. (Tr. 262, 264, 292–93, 295, 383).

#### 1. Plaintiff's Testimony

In a self-reported questionnaire dated July 9, 2012, Plaintiff indicated that she had trouble with bathing, but could shower. (Tr. 181). Plaintiff completed some household chores such as washing dishes and dusting, but her roommate largely took care of the cleaning. (Tr. 182). Plaintiff shopped for groceries and handled money. (Tr. 184). Plaintiff cared for two pet cats. (Tr. 181). Plaintiff stated that she got along with family, friends, neighbors, and others, and went to group meetings, doctor appointments, and the park. (Tr. 185). Plaintiff claimed that she sometimes threw things out of anger, or had panic attacks as often as three to seven times per week. (Tr. 186–89). Plaintiff indicated that she got frustrated reading because she could not read well. (Tr. 186).

At the hearing, Plaintiff testified that her most significant impairment preventing her from work was her heart impairment. (Tr. 35–36). Plaintiff stated that her heart condition caused her to experience palpitations, irregular heartbeats, pain in her throat, and dizziness. (Tr. 36). Plaintiff indicated that she was on the medication Metoprolol and had laser heart surgery. (*Id.*). Plaintiff also alleged that she had scoliosis of the spine, which caused her to experience sharp pains in her back and have difficulty lifting, standing, sitting, and bending. (Tr. 39). Plaintiff claimed that she could lift up to ten pounds, and sit or stand for ten to fifteen minutes at a time. (Tr. 40–41). Plaintiff further stated that she had pain in her right leg that made it difficult to go up and down stairs,

but indicated that she had not yet sought treatment for that pain. (Tr. 43–44).

Plaintiff also alleged disability due to depression, insomnia, and anger issues. (Tr. 44–48). Plaintiff stated that she was not taking medication for these problems, but was receiving therapy. (Tr. 44). Plaintiff attended group therapy five days per week and also attended individual sessions. (Id.).

Plaintiff lived in a halfway house because she had a history of alcohol abuse and had relapsed. (Tr. 52). Plaintiff had two grown children and received assistance from DSS. (Tr. 32).

### 2. Case Manager's Testimony

Plaintiff's case manager, Mary Yaw, also testified at the hearing. (Tr. 60). At the time of the hearing, Ms. Yaw was a case manager at Catholic Family Services. (Tr. 61). Ms. Yaw testified that Plaintiff was receiving counseling for her anger, depression, anxiety, post-traumatic stress disorder ("PTSD"), and alcohol and drug abuse. (Tr. 66–67). Ms. Yaw stated that Plaintiff had trouble sitting through therapy sessions and would often get up and move around the room. (Tr. 65). Ms. Yaw had observed Plaintiff "in full blown anger." (Tr. 66). Plaintiff would yell, and "[fly] off the handle." (Id.).

### 3. Vocational Expert's Testimony

At the hearing, the ALJ presented the VE with a series of hypothetical questions. (Tr. 70–73). First, the VE was asked to consider someone of Plaintiff's age, education, and work experience who could perform work at a light exertional level who was limited by needing to avoid heavy machinery and driving, concentrated exposure to respiratory irritants such as dust, odors, fumes, and extremes in temperature and humidity, and was limited to simple tasks and should primarily work alone. (Tr. 69). The VE opined that such a person could perform the jobs of photocopy machine operator or collator operator. (Tr. 70).

The ALJ then presented a second hypothetical question that limited the hypothetical individual to sedentary work with the same additional restrictions. (Id.). The VE stated that such an individual could perform the work of a table worker or addresser, both sedentary, unskilled positions. (Id.).

In a third hypothetical, the ALJ asked the VE to consider someone from the first hypothetical with a further impairment that the individual would be off task approximately 20 percent of the time. (Tr. 71). The VE opined that such an individual could not maintain employment. (Id.).

### 4. Education Records

The administrative record contains records from Greece Central School District indicating that Plaintiff attended special education classes. (Tr. 222–50). Test results contained in the records indicate that Plaintiff scored within the borderline range of cognitive functioning. (Tr. 248).

### C. Summary of the Medical Evidence

The Court assumes the parties' familiarity with the medical record, which is summarized below.

A psychosocial intake evaluation by psychiatrist Dr. Wendy Rosen with respect to treatment dates from January 14, 2011, through March 4, 2011, noted that Plaintiff had a long history of substance abuse and mental health issues, and that Plaintiff experienced symptoms of sadness, tearfulness, rage, insomnia, hopelessness, guilt, lack of energy and motivation, loss of appetite, anxiety, mood swings, fears, nightmares, and ruminating thoughts. (Tr. 293).

Plaintiff went to the emergency department of Rochester Medical Center ("RMC") on March 11, 2011, after falling

out of a chair at her adult-care facility. (Tr. 394). Plaintiff complained of palpitations, burning in her throat, weakness, trouble breathing, and dizziness. (Id.). Dr. Jeremy Cushman treated Plaintiff at the emergency department and observed that plaintiff appeared unkempt. (Tr. 396). A cardiovascular review revealed a normal rate, regular rhythm, normal heart sounds, intact distal pulses, and no murmurs. (Tr. 397). Plaintiff did not display edema. (Id). Plaintiff had no abnormal heart sounds or rhythm on exam or an electrocardiogram ("EKG"). (Id.).

On December 17, 2011, Plaintiff returned to the RMC emergency department complaining of palpitations following a dispute with her boyfriend. (Tr. 370). Dr. Radha Ramachandran performed an examination and found that Plaintiff's heart revealed normal rate and heart sounds, regular rhythm, and no gallops, frictions, or rubs. (Tr. 372). An EKG was normal. (Tr. 373).

On February 14, 2012, Dr. Elizabeth Hager, a psychiatrist, diagnosed Plaintiff with bipolar disorder, alcohol and cocaine dependence in early remission, and borderline personality disorder. (Tr. 407). Plaintiff reported anger, aggression, suicidal ideation, mania, anxiety, paranoia, flashbacks, nightmares, depressed mood, crying spells, panic attacks, and social withdrawal. (Id.).

Plaintiff returned to the RMC emergency department on February 23, 2012, after she sustained a one centimeter laceration to the head. (Tr. 425). Dr. Stephen H. Rosenbloom noted that Plaintiff was intoxicated and displaying "bizarre behavior." (Id.). A computed tomography ("CT") scan of Plaintiff's head was negative. (Tr. 428). Plaintiff was discharged once "clinically sober." (Id.).

On April 18, 2012, Plaintiff treated with cardiologist Dr. Roy Weiner for heart palpitations. (Tr. 419). Dr. Weiner noted that Plaintiff had not been taking her medications, but was more mentally stable than she had appeared in prior appointments. (Id.). Dr. Weiner found that there was sufficient documentation to support supraventricular tachycardia ("SVT"). (Id.). Dr. Weiner noted that Plaintiff's arrhythmia affected the quality of her life, and so he recommended that Plaintiff undergo a radiofrequency ablation. (Id.).

On April 27, 2012, Dr. Parag Patel performed an electrophysiological ("EP") study with ablation of a concealed posterolateral pathway. (Tr. 453–54). Dr. Patel successfully completed the ablation of the concealed left-sided pathway. (Tr. 454).

On July 7, 2012, Dr. Wiener reported that post-ablation, Plaintiff had a sinus rhythm with a "single PVC." (Tr. 495).

Plaintiff visited Diana Chadock, a nurse practitioner, on July 19, 2012, complaining of a rapid heartbeat. (Tr. 496). Ms. Chadock examined Plaintiff and reported regular S1 and S2 sounds with no murmurs, rubs, or gallops. (Id.). An EKG showed normal sinus rhythm, but poor R-wave progression and nonspecific S–T abnormalities. (Id.). Ms. Chadock recommended that Plaintiff consider another EP study with Dr. Patel. (Id.).

On July 23, 2012, Dr. Karl Eurenius performed a consultative examination. (Tr. 460–63). Dr. Eurenius examined Plaintiff's heart and found that Plaintiff had a regular rhythm with no extra beats, murmurs, gallops, or audible rubs. (Tr. 462). A musculoskeletal review showed reduced range of motion of the lumbar spine, but normal range of motion of the cervical spine, shoulders, elbows, forearms, hips, knees, and ankles. (Id.). Dr. Eurenius opined that Plaintiff should avoid: heights and operating machinery; exposure to smoke, dust, and other known respiratory irritants; and activities requiring moderate exertion due to her cardiac his-

tory. (Tr. 463). He further opined that Plaintiff was moderately limited in sitting, standing, walking, climbing, bending, lifting, or carrying due to her back pain. (*Id.*).

On July 23, 2012, psychologist Dr. Yu-Ying Lin performed a consultative examination. (Tr. 455). Dr. Lin observed that Plaintiff had a full range of affect and a neutral mood. (Tr. 456). Plaintiff's thought process was "circumstantial and tangential." (*Id.*). Dr. Lin stated that Plaintiff's cognitive functioning appeared to be below average. (Tr. 457). Plaintiff had trouble with multiplication but could do simple calculations. (*Id.*). Dr. Lin noted that Plaintiff's recent and remote memory was impaired, and that her attention and concentration appeared to be impaired as a result of her limited intellectual functioning. (*Id.*). Dr. Lin diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, intermittent explosive disorder, and alcohol dependence in early remission. (Tr. 458). Dr. Lin opined that Plaintiff could understand and follow simple directions and instructions, perform simple tasks, learn new tasks, perform complex tasks independently, maintain a regular schedule, and relate adequately with others. (Tr. 457). Dr. Lin found that Plaintiff could not maintain attention and concentration, make appropriate decisions, or deal appropriately with stress. (*Id*). Dr. Lin found psychiatric problems, but determined that these issues were not significant enough to interfere with Plaintiff's ability to function on a daily basis. (Tr. 458).

On August 7, 2012, Dr. S. Altmansberger, a state agency psychiatrist, reviewed Plaintiff's medical evidence in the record. (Tr. 464–80). Dr. Altmansberger opined that Plaintiff had a mild limitation in activities of daily living; a moderate limitation in concentration, persistence, and pace; a moderate limitation in social functioning;

and no episodes of decompensation of extended duration. (Tr. 474). Dr. Altmansberger determined that Plaintiff was able to perform unskilled work. (Tr. 480).

Plaintiff visited Dr. Patel on October 16, 2012. (Tr. 499). Dr. Patel noted that he had attempted to set Plaintiff up for a review with a Holter monitor to evaluate Plaintiff's complaints of palpitations, but was unsuccessful because Plaintiff's cats reportedly jumped on the monitor. (*Id.*). Dr. Patel recommended repeating the EP study to determine if there were any arrhythmias. (Tr. 500). An EKG showed normal sinus rhythm. (*Id.*).

On November 16, 2012, Plaintiff had another EP study. (Tr. 501). The EP study showed no evidence of concealed pathways and no recurrence of the left-lateral concealed pathway. (*Id.*).

## III. DISCUSSION

### A. Standard of Review

▮ This Court has jurisdiction to review the final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c)(3). "In reviewing a decision of the Commissioner, the Court may 'enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing.'" *Emerson v. Comm'r of Soc. Sec.*, No. 12 Civ. 6451(PAC)(SN), 2014 WL 1265918, at *9 (S.D.N.Y. Mar. 27, 2014) (quoting 42 U.S.C. § 405(g)). 42 U.S.C. § 405(g) directs the Court to accept findings of fact made by the Commissioner, so long as the findings are supported by substantial evidence in the record. Substantial evidence is "more than a mere scintilla," and "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). "Where there is a

reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987).

█ Therefore, the scope of the Court's review is limited to determining whether the Commissioner applied the appropriate legal standards in evaluating the plaintiff's claim, and whether the Commissioner's findings were supported by substantial evidence in the record. *See Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983) (stating that a reviewing Court does not examine a benefits case *de novo* ). If the Court finds no legal error, and that there is substantial evidence for the Commissioner's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46–47 (2d Cir.1996).

█ Judgment on the pleadings may be granted under Rule 12(c) where the "material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988).

## B. Determining Disability Under the Social Security Act

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see Rembert v. Colvin,* No. 13–CV–638A, 2014 WL 950141, at *6 (W.D.N.Y. Mar. 11, 2014). A disabling

impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostics techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). The burden is on the claimant to demonstrate that he is disabled within the meaning of the Act. *See Draegert v. Barnhart,* 311 F.3d 468, 472 (2d Cir.2002). The individual will only be declared disabled if his impairment is of such severity that he is unable to do his previous work and cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In making the disability determination, the ALJ follows a five-step sequential analysis. If the ALJ makes a determination at any step, the evaluation will not continue to the next step. 20 C.F.R. § 416.920(a)(4). The following five steps are followed:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then

asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir.2000); *see* 20 C.F.R. §§ 404.1520, 416.920.

### C. Analysis of the ALJ's Sequential Evaluation

Plaintiff argues that the ALJ committed several legal errors that require remand for the calculation of benefits or reconsideration by a different ALJ. (Dkt. 11–1 at 26). The Commissioner maintains that the decision of ALJ Costello is supported by substantial evidence and should be affirmed. (Dkt. 6–1 at 15, 24).

#### 1. Step One: Substantial Gainful Activity

In applying the five-step sequential analysis at the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 26, 2012, the date of her application. (Tr. 14). The parties do not contest this determination and it is supported by substantial evidence.

#### 2. Step Two: Severe Impairments

At the second step, the ALJ found that Plaintiff has the following severe impairments: bipolar, depression, anxiety, asthma, scoliosis, supraventricular tachycardia, and low average to borderline intelligence. (*Id*). The ALJ also noted that Plaintiff had a nonsevere impairment of a history of alcohol and drug abuse that was in remission and not material. (*Id.*). The parties do not contest this determination and it is supported by substantial evidence.

#### 3. Step Three: Listed Impairments

At the third step, the ALJ analyzed the medical evidence and found that Plaintiff did not have a listed impairment or combination of impairments that would render her disabled. (Tr. 12–15). Specifically, the ALJ considered listings 1.04, 4.06, 12.04, and 12.06. (Tr. 14–15). The ALJ found that Plaintiff's scoliosis did not meet listing 1.04 for disorders of the spine because Plaintiff had no objective evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. (Tr. 14–15). The ALJ considered listing 4.06 for symptomatic congenital heart disease, but found that Plaintiff did not satisfy the listing because the record did not contain objective medical evidence of required limitations for the listing. (Tr. 15). The ALJ also examined Plaintiff's mental health complaints under the criteria of listings 12.04 and 12.06, but determined that the medical record did not satisfy the criteria. (*Id.*).

Plaintiff argues that her mental health impairments satisfy listing 12.04, and that the ALJ erred by not reaching that conclusion. (Dkt. 11–1 at 25). Plaintiff claims that the record supports that Plaintiff has eight of nine symptoms of depression, and that only four are needed to satisfy a listing. (*Id.*). While it is true that a Plaintiff alleging a depressive syndrome under listing 12.04 must demonstrate at least four of nine symptoms, there are additional requirements that must be met before a Plaintiff has satisfied the criteria of listing 12.04.

An ALJ's determination of a Plaintiff's mental functional limitations must reflect application of the special technique set out in 20 C.F.R. § 404.1520a(c)(3). *Shaw v. Comm'r of Soc. Sec.*, No. 7:11–cv–1463 (GLS), 2013 WL 316616, at *6 (N.D.N.Y. Jan. 28, 2013). "If the claimant is found to have a medically determinable mental

impairment, the ALJ must assess the claimant's degree of resulting limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." *Crayton v. Astrue*, 944 F.Supp.2d 231, 235–36 (W.D.N.Y.2013) (citing 20 C.F.R. § 404.1520a(c)(3)). "If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document [his] application of the [psychiatric review technique], and [his] written decision must 'reflect application of the technique, and ... include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Id.* at 236 (quoting *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir.2008)) (alteration in original).

Here, ALJ Costello properly applied the psychiatric review technique. With respect to activities of daily living, the ALJ found that Plaintiff had mild restrictions because she reported that she was able to cook, clean, do laundry, shop, shower and dress herself, navigate public transportation, and attend group therapy on a daily basis. (Tr. 15). The ALJ determined that Plaintiff had moderate difficulties in social functioning because Plaintiff could be "irritable and violent in her responses to people." (*Id.*). With regard to concentration, persistence, or pace, the ALJ determined that Plaintiff had moderate difficulties as a result of her below average intellectual functioning and impaired concentration and memory skills. (*Id.*). The ALJ found that Plaintiff had not experienced any episodes of decompensation of extended duration, because she had no evidence of episodes of decompensation or any evidence of psychiatric hospitalizations. (*Id.*). Because Plaintiff had no marked limitations in these four categories, and no episodes of decompensation, the ALJ concluded that Plaintiff did not satisfy the criteria of a mental health listing. (Tr. 15–16). These findings are supported by substantial evidence in the record and were made according to the appropriate legal technique.

Contrary to Plaintiff's assertions, ALJ Costello did not commit a legal error in finding that Plaintiff's mental impairments did not satisfy a 12.00 listing.

### 4. Step Four: The ALJ's Determination of RFC

██ At the fourth step, the ALJ determined Plaintiff's residual functional capacity to perform work. (Tr. 16–20). The ALJ concluded that Plaintiff had the following RFC:

[t]o perform light work as defined in 20 CFR 416.967(b) except that the claimant is able to perform simple tasks only; is never able to drive or operate heavy machinery; must avoid concentrated exposure to respiratory irritants (dust, odors, fumes, extremes in temperature, and humidity); and must work primarily alone, with only occasional supervision.

(Tr. 16).

#### a. Substantial Evidence

##### i. Heart Condition

ALJ Costello recognized that Plaintiffs heart condition, namely her heart palpitations, had a "negative effect on the [Plaintiff's] quality of life." (Tr. 17). The ALJ made note of the medical records demonstrating that Plaintiff experienced frequent lightheadedness and dizziness, and had occasions when she would pass out or fall as a result of her heart condition. (*Id.*). However, the ALJ also noted that Plaintiff underwent a laser treatment in April 2010 to open a blocked pathway to the heart that was causing episodes of tachycardia. (*Id.*). Following this procedure, Plaintiff reported fewer episodes of palpitations, but still reported dizzy spells. (*Id.*). Although Plaintiff presented to the emergen-

cy room in March 2012 for supraventricular tachycardia, her tests were normal. (Tr. 18). Plaintiff does not directly contest the ALJ's findings with respect to her heart condition. The ALJ incorporated limitations due to the heart condition into his RFC finding insofar as he found that Plaintiff should not drive or operate heavy machinery, and should be limited to light work.

### ii. Back Pain

The ALJ also noted that Plaintiff complained of back pain as a result of scoliosis. (Tr. 18). Plaintiff claimed that she had a stabbing pain in her lower back that radiated to her legs and calves with numbness, and that she was only able to sit or stand for ten to fifteen minutes at a time before needing to change positions due to the pain. (Tr. 18). However, Plaintiff had never received treatment for her back pain, and had not had an MRI of her back. (*Id.*). The ALJ considered the evaluation of Dr. Eurenius, noting that Plaintiff had pain in her lower mid back on examination, but was otherwise able to move about and rise from a chair without difficulty. (*Id.*). ALJ Costello assigned "significant weight" to Dr. Eurenius' opinion that Plaintiff could work, but should avoid heights and operating heavy machinery, should avoid activities requiring moderate exertion, and should avoid exposure to respiratory irritants. (*Id.*).

Plaintiff argues that Dr. Eurenius' physical assessment of Plaintiff's exertional capacity was too vague to be useful. (Dkt. 11–1 at 24). Namely, Plaintiff objects to Dr. Eurenius' conclusion that Plaintiff was "moderately limited" in sitting, standing, walking, and carrying. (*Id.* (citing Tr. 463)). Although Plaintiff objects to Dr. Eurenius' conclusions, the opinion was supported by an objective physical examination and is supported by substantial evidence. On examination, Plaintiff had a normal gait and could walk on her heels and toes, albeit with some difficulty due to pain. (Tr. 461). Plaintiff could squat one-quarter way with pain in her lower back. (*Id.*). Otherwise, Plaintiff's stance was normal and she did not need assistance to rise from a chair or get on or off of the exam table. (*Id.*). Notably, Dr. Eurenius' musculoskeletal examination showed "no scoliosis, kyphosis, or abnormality in thoracic spine to [his] observation." (Tr. 462). As a result, the ALJ was able to properly consider Dr. Eurenius' opinion as substantial evidence. *See Smith v. Colvin*, 17 F.Supp.3d 260, 268 (W.D.N.Y.2014) ("[T]he opinions of consulting sources 'may constitute substantial evidence if they are consistent with the record as a whole.'") (quoting *Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y.2005)). "This is particularly so where the consultant directly examines the applicant." *Id.* at 268 (citing 20 C.F.R. § 416.927(c)(1)).

Plaintiff also argues that the ALJ should have discussed the testimony of Plaintiff's case manager, Ms. Yaw, that Plaintiff had difficulty sitting and would frequently move around the room. (Dkt. 11–1 at 18 (citing Tr. 65)). Although the ALJ did not specifically discuss Ms. Yaw's testimony in his decision, Ms. Yaw's testimony did not add any new information and would not have changed the outcome of his determination with respect to Plaintiff's allegations of pain. The ALJ relied on Dr. Eurenius' objective medical examination to determine that Plaintiff was capable of performing light work. Ms. Yaw's testimony that Plaintiff frequently stood to walk around the room does not suggest that Plaintiff had an identifiable condition that could be objectively measured any more than Plaintiff's own testimony that she needed to change positions frequently. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir.2010) (finding harmless error where the ALJ's consideration of a doc-

tor's report would not have changed the ALJ's adverse determination).

### iii. Asthma

ALJ Costello stated that the record showed that Plaintiff had untreated asthma since Plaintiff was in her twenties, but there was also no evidence of an asthma attack in the medical record. (Tr. 18). Plaintiff does not contest the ALJ's findings with respect to her asthma, and indeed, the ALJ incorporated Plaintiff's asthma into his RFC despite the lack of medical evidence in the record supporting the need to do so.

### iv. Mental Health

The ALJ noted that Plaintiff had major depressive disorder, generalized anxiety disorder, intermittent explosive disorder, a low IQ, and alcohol dependence in remission. (Tr. 18). Plaintiff reported symptoms of depression including dysphoric moods, psychomotor retardation, loss of usual interests, irritability, fatigue, diminished self-esteem, difficulty falling asleep, and an increased appetite. (Id.). Plaintiff's symptoms of anxiety included excessive worry, fatigue, irritability, hyper startle responses, hypervigilance, restlessness, and difficulty concentrating. (Id.). Plaintiff had anger management issues and had even gotten into legal trouble as a result of her temper. (Tr. 19).

With respect to Plaintiff's mental impairments, ALJ Costello considered the opinion of consultative examiner Dr. Lin, who reported that Plaintiff's concentration and memory skills were impaired, and that Plaintiff's intellectual functioning appeared to be below average. (Id.). The ALJ assigned "significant weight" to Dr. Lin's opinion that Plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; maintain a regular schedule; learn new tasks; perform complex tasks independently; and relate adequately with others. (Id.). Dr. Lin also opined that Plaintiff

was unable to maintain attention and concentration, make appropriate decisions, or appropriately deal with stress. (Id.).

ALJ Costello also assigned "significant weight" to the opinion of Dr. Altmansberger, who found that Plaintiff had intermittent explosive disorder, major depressive disorder, generalized anxiety disorder, and alcohol abuse in remission. (Id.). Dr. Altmansberger opined that Plaintiff could work, but had moderate limitations. (Id.).

Plaintiff argues that the ALJ erred by not incorporating Dr. Altmansberger's opinion that Plaintiff had difficulties maintaining social functioning, concentration, persistence, and pace into the ALJ's RFC or hypotheticals to the VE. (Dkt. 11–1 at 23). Plaintiff also argues that the ALJ improperly adopted only portions of Dr. Lin's opinion, neglecting the portion in which Dr. Lin opined that Plaintiff could not maintain attention and concentration, could not make appropriate decisions, could not appropriately deal with stress, and had difficulties as a result of lack of motivation and distractibility. (Id. at 22 (citing Tr. 457–58)). The ALJ stated that his RFC accounted for Plaintiff's "low IQ and difficulty interacting with people." (Tr. 20). As for Plaintiff's limitations with maintaining concentration, persistence, and pace, the ALJ restricted Plaintiff to performing simple tasks. The Second Circuit Court of Appeals has explained:

[A]n ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace.... [H]owever, ... an ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) 'medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace,' and the challenged hypothetical is

limited 'to include only unskilled work'; or (2) the hypothetical 'otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]'

*McIntyre v. Colvin,* 758 F.3d 146, 152 (2d Cir.2014) (quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1180 (11th Cir. 2011)) (alteration in original). Here, substantial evidence in the record demonstrates that Plaintiff can engage in "simple, routine tasks," and the ALJ included this limitation in his hypotheticals to the VE and eventual RFC finding. "By explicitly limiting the hypothetical to such tasks (after fully explaining [Plaintiff's] physical restrictions), the ALJ sufficiently accounted for the combined effect of Plaintiff's impairments," and any failure to specifically incorporate the nonexertional limitations named by Drs. Altmansberger or Lin was harmless. *Id.* (quotation omitted).

■ Plaintiff also argues that it was a legal error for the ALJ to fail to accept the evaluations in the Rochester Rehabilitation Center mental health records (Tr. 291–98), Dr. Hager's opinion (Tr. 407–11), or the emergency room treatments as mental health records. (Dkt. 11–1 at 20). "Although the hearing officer is required to fully develop the record, [he] is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered." *Greene v. Colvin,* 936 F.Supp.2d 216, 226 (W.D.N.Y.2013). In fact, the ALJ did note in his decision that Plaintiff had a "history of presenting to the emergency room" and noted that Plaintiff attended group therapy five days per week. (Tr. 17). Although Dr. Hager diagnosed Plaintiff with bipolar disorder, alcohol and cocaine dependence in early remission, and borderline personality disorder, Plaintiff's reported symptoms with respect to these diagnoses are largely reflected elsewhere in the ALJ's decision. (Tr. 18–19, 407). Accordingly, the fact that the

ALJ did not expressly acknowledge these records as mental health records in his decision does not result in reversible error.

#### b. Credibility Determination

ALJ Costello recognized that the record showed that "claimant clearly has legitimate impairments." (Tr. 19). However, the ALJ found that the record and Plaintiff's testimony did not support a finding that these impairments were disabling. (Tr. 19).

The Social Security regulations require a two-step process for the ALJ to consider the extent to which subjective evidence of symptoms can reasonably be accepted as consistent with the medical and other objective evidence. *Brownell v. Comm'r of Soc. Sec.,* No. 1:05–CV–0588 (NPM/VEB), 2009 WL 5214948, at *3 (N.D.N.Y. Dec. 28, 2009). First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged...." 20 C.F.R. § 404.1529(a). Second, if an impairment is shown, the ALJ must evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(b). When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In evaluating a plaintiff's credibility, the ALJ must consider several factors, including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Stewart v. Barnhart*, 235 F.R.D. 579, 590 (W.D.N.Y.2006); *see* 20 C.F.R. § 404.1529(c).

In the instant case, the ALJ properly applied the two step analysis. The ALJ found that Plaintiff had medically determinable impairments that were likely to cause the alleged symptoms, however, he found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible as they were inconsistent with the medical evidence. (Tr. 17). For example, the ALJ noted that Plaintiff testified to her ability to cook, clean, shop, navigate public transportation, and attend group therapy on a regular basis despite her complaints of disabling symptoms and limitations. (Tr. 19). Further, the record did not include mental health treatment notes, as would be expected for an individual claiming such disabling mental health symptoms. (*Id.*). In addition, the ALJ found that the medical records showed that Plaintiff's heart problems had become more controlled following her ablation procedure. (*Id.*).

Plaintiff argues that the ALJ erred by not crediting Plaintiff's allegations of pain or impaired memory to incorporate those limitations into his RFC. (Dkt. 11–1 at 18). The only evidence of Plaintiff's back pain or impaired memory is her own testimony of pain. The record contains no medical testing indicating impaired memory, and Plaintiff has never treated with a specialist or had imaging completed with respect to her back pain. "In making a credibility determination, the hearing officer 'is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question." *Greene*, 936 F.Supp.2d at 226 (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir.2010)). "Rather, the hearing officer 'may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.' " *Id.*

Plaintiff argues that it was improper for the ALJ to undermine her credibility due to her failure to seek out additional medical treatment for her mental health concerns or back pain. (Dkt. 11–1 at 24–26). An ALJ is permitted to consider a Plaintiff's failure to seek treatment for alleged disabilities when evaluating a Plaintiff's credibility with respect to statements of the extent of the impairments. *See Stroud v. Comm'r of Soc. Sec.*, No. 13 Civ. 3251(AT)(JCF), 2014 WL 4652581, at *11 (S.D.N.Y. Sept. 8, 2014) (holding the ALJ was permitted to consider fact claimant had not sought treatment for her alleged back pain); *see also Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir.1989) (finding claimant's failure to seek medical attention "seriously undermine[d]" contention of disability); *Mahoney v. Apfel*, 48 F.Supp.2d 237, 246 (E.D.N.Y.1999) ("To be sure, the ALJ is permitted to attach significance to plaintiff's failure to seek medical treatment.").

Plaintiff contends that the ALJ erred by failing to address or credit the side effects of Plaintiff's medications for mental health. (Dkt. 11–1 at 19). At the hearing, Plaintiff testified that she had previously taken medications including Ability, Lithium, Prozac, Seroquel, Wellbutrin, and Zyprexa, and that she was waiting for her therapist to recommend a new prescription. (Tr. 55). Plaintiff argues that the ALJ should have considered the potential side effects, such as tachycardia, as contributing to her disability. (Dkt. 11–1 at 6–7, 19). The ALJ did explicitly address the fact that Plaintiff had taken these various medications at different times in the past. (Tr. 19). The fact that the ALJ did not address the side effects of medications that Plaintiff was no longer taking does not create reversible error.

" 'It is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant.' " *Aponte v. Sec'y, Dep't Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). "The ALJ 'has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment ... [which he must do] in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant.' " *King v. Astrue*, No. 12–CV–6186T, 2013 WL 3154129, at *8 (W.D.N.Y. June 21, 2013) (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir.1984)) (alteration in original). "If 'after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, the ALJ decides to discredit plaintiff's claim of severe and disabling pain, that decision is supported by substantial evidence.' " *Drennen v. Astrue*, No. 10–CV–6007MAT, 2012 WL 42496, at

*6 (W.D.N.Y. Jan. 9, 2012) (quoting *Pascariello v. Heckler*, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)).

As a result, the ALJ cited to substantial evidence to support his credibility finding, and in doing so covered most of the factors set forth in the regulations. The Court cannot say that the ALJ conducted a legally insufficient analysis.

### 5. Step Five: Jobs in the National Economy for Plaintiff to Perform

█ The fifth step of the sequential analysis is comprised of two parts. First, the ALJ assessed Plaintiff's job qualifications by considering her physical ability, age, and education. (Tr. 20). At the time of the decision, Plaintiff was 44 years old, had a limited education, and no past relevant work. (*Id*). Second, the ALJ determined whether there were jobs existing in the national economy that a person with Plaintiff's qualifications and RFC could perform. (Tr. 20–21). ALJ Costello found that Plaintiff's ability to perform work at all exertional levels was compromised by Plaintiff's nonexertional limitations, but, based on the VE's testimony, the ALJ found that Plaintiff was still able to work. (*Id.*). Relying on the VE's testimony, the ALJ concluded that Plaintiff was able to perform the representative jobs of photo machine operator or collator operator, as jobs existing in the national economy. (Tr. 21).

Because the ALJ's RFC was supported by substantial evidence, and because the ALJ did not commit legal error in evaluating Plaintiff's claim, the Court finds that the ALJ properly relied on the VE testimony to find that there are significant jobs in the national economy that Plaintiff can perform, and that Plaintiff is therefore not disabled within the meaning of the Act. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir.1983) (finding the ALJ properly relied on the VE's responses to a

hypothetical that was based on the ALJ's substantially supported RFC assessment).

## IV. CONCLUSION

The Court has considered Plaintiff's remaining arguments and finds them to be without merit. For the foregoing reasons, the Commissioner's determination that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings (Dkt. 6) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied. Plaintiff's complaint is dismissed with prejudice.

SO ORDERED.